Annie Lou **CROCKER**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 95–696C.

United States Court of Federal Claims.

Jan. 15, 1997.

---

---

Annie Lou Crocker, Lake, MS, pro se.

Elizabeth W. Newsom, Department of Justice, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Assistant Director, all of Washington, D.C., for defendant (Richard Medema, Drug Enforcement Administration, Arlington, Virginia, of counsel).

*OPINION*

BRUGGINK, Judge.

This case presents the question of whether the United States Court of Federal Claims may hear a claim that personal property was unlawfully seized and forfeited. The plaintiff is proceeding *pro se.* The matter is presently before the court on the defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. Because recent decisions of the United States Court of Appeals for the Federal Circuit and of this court suggest that jurisdiction does attach, a telephonic conference was held November 1, 1996, in which the court asked for additional briefing. Further oral argument is deemed unnecessary, For the reasons stated herein, defendant's motion to dismiss is granted.

*Background*[1]

The Sheriff's Department of Scott County, Mississippi executed a search warrant at the residence of plaintiff, Annie Lou Crocker, and her husband, Harold Crocker. The warrant was obtained upon information that stolen property was being traded for controlled substances at their residence. Harold Crocker was arrested and charged with possession of controlled substances. During the execution of the search warrant, the Sheriff's department seized certain property found at the residence. This property included a considerable sum of United States currency and savings bonds, which plaintiff alleges belong to her.[2]

Pursuant to the Controlled Substances Act, 21 U.S.C. §§ 801, 881(a)(6) (1994), the Sheriff's department turned the seized property over to the Drug Enforcement Administration (DEA) for forfeiture proceedings. In the typical circumstance, the DEA would

---

1. This factual background is taken from the facts alleged in the complaint and those admitted in the plaintiff's response in opposition to the Government's motion to dismiss. Though the court takes as true the plaintiff's alleged facts for purposes of a motion to dismiss, the background facts presented in this opinion are not disputed by either party. The court has not utilized the materials attached to the Government's supplemental briefing.

2. The Drug Enforcement Administration estimates the total value of the seized property to be in excess of $132,349.69. In her complaint, Ms. Crocker does not allege the value of the seized property to which she claims ownership. However, in her brief in opposition to the Government's motion to dismiss, Ms. Crocker asserts that the seized property was "35,000 currency and rare coins collection and 57 U.S. government savings bonds." Plaintiff's Brief at 5.

then provide notice of forfeiture proceedings to interested parties by publishing such notices for three consecutive weeks in a "newspaper of general circulation." 21 C.F.R. § 1316.75 (1996). This notice informs the interested parties that claims of ownership must be filed with the DEA within twenty days of the date of first publication of the notice. *Id.* § 1316.75(b)(3). The filing of such a claim has the effect of suspending the administrative forfeiture. Upon receipt of a claim, the agency transfers the matter to the appropriate office of the United States Attorney, which may then institute judicial forfeiture proceedings in the district court. *Id.* § 1316.76(a). If no claims of ownership are filed within the twenty-day notice period, the agency administratively forfeits the property to the United States. *Id.* § 1316.77(a).

In the present case, it is apparently undisputed that the DEA published a notice and that, at some point, the plaintiff filed a claim of ownership of the property. The DEA treated the claim as untimely filed, however, and proceeded to administratively forfeit the seized property to the United States. Upon the DEA's rejection of her claim of ownership, the plaintiff instituted the present action seeking the return of her alleged property or compensation for its value.

*Discussion*

▮ The United States Court of Federal Claims may only render decisions in cases against the Government where Congress has specifically and unambiguously waived sovereign immunity and provided for subject matter jurisdiction in the court. *See United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969). The Tucker Act, 28 U.S.C. § 1491 (1994), waives the Government's traditional immunity from suit, and gives the Court of Federal Claims jurisdiction to hear claims against the Government in a limited set of circumstances. Such claims include those "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liqui-

dated or unliquidated damages in cases not sounding in tort." *Id.* § 1491(a)(1).

▮ Although the Tucker Act operates as a waiver of sovereign immunity, it is well-settled that the Act "does not create any substantive right enforceable against the United States for money damages.... The Act merely confers jurisdiction in the event that a substantive right to sue the Government already exists." *Berry v. United States,* 27 Fed.Cl. 96, 100 (1992) (citing *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)). *See also Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605–07, 372 F.2d 1002, 1007–09 (1967); *Heagy v. United States,* 12 Cl.Ct. 694, 697 (1987), *aff'd,* 848 F.2d 1244 (Fed.Cir. 1988). For jurisdiction to attach in this court, there must be some other statute, regulation, or constitutional provision that specifically anticipates the allowance of money damages. *Berry,* 27 Fed.Cl. at 100 (citing *Mobin v. United States,* 22 Cl.Ct. 331, 333–34 (1991)).

The plaintiff's underlying argument in this case is that she followed the DEA's administrative procedures by filing her claim of ownership within the allotted time and that she was thus improperly denied the right to a judicial disposition as to the ownership of the property in question. In essence, her claim is that the DEA failed to follow procedures established by the applicable statute and regulations. She contends that this failure results in violation of constitutional, statutory, and regulatory provisions. The constitutional provisions invoked are the Due Process and Takings Clauses of the Fifth Amendment and the unreasonable search and seizure provisions of the Fourth Amendment. The statutory and procedural grounds raised are the notice provisions of the forfeiture statute and attendant regulations. For the following reasons the court concludes that, as to most of her complaint, the court lacks jurisdiction to proceed. As to the balance, her complaint fails to state a claim upon which relief can be granted.

*1. Due Process and Unreasonable Search and Seizure Claims*

▮ It is settled that the remedy for violations of the Due Process Clause of the

Fifth Amendment or the Search and Seizure Clause of the Fourth Amendment is not the payment of money damages. *Brown v. United States,* 35 Fed.Cl. 258, 266 (1996) (Fourth Amendment) (citing *Murray v. United States,* 817 F.2d 1580, 1582–83 (Fed.Cir. 1987); *Earnest v. United States,* 33 Fed.Cl. 341, 344 (1995)); *LeBlanc v. United States,* 50 F.3d 1025, 1028 (Fed.Cir.1995) (Due Process); *Collins v. United States,* 67 F.3d 284, 288 (Fed.Cir.1995) (Due Process); *Heagy,* 12 Cl.Ct. at 698 (Due Process) (citing *Montalvo v. United States,* 231 Ct.Cl. 980, 982–83, 1982 WL 25825 (1982); *J & L Janitorial Serv., Inc. v. United States,* 231 Ct.Cl. 837, 838, 1982 WL 25323 (1982)). Because claims for violation of these provisions do not lead to the payment of money damages, neither this court nor the district courts may decide them under the Tucker Act. Instead, these provisions are enforced through equitable remedies in the district courts pursuant to their federal question jurisdiction. *See* 28 U.S.C. § 1331. The allegations in the complaint based on these constitutional provisions are dismissed for lack of subject matter jurisdiction.

### 2. The Fifth Amendment Takings Claim

■ Although the plaintiff states in the first paragraph of her complaint that her property was "taken without just compensation, in violation of the Fourth Amendment," her complaint, taken as a whole, may be broadly read as also alleging a taking without compensation in violation of the Fifth Amendment. This court has held that the Takings Clause of the Fifth Amendment specifically anticipates the payment of money damages for its violation, and therefore that subject matter jurisdiction is proper in the Court of Federal Claims. In addition, this court has exclusive jurisdiction over such takings claims that exceed $10,000 in value. 28 U.S.C. § 1346(a)(2); 28 U.S.C. § 1491(a)(1). Thus, if Ms. Crocker has stated a valid takings claim under the Fifth Amendment, it may be adjudicated in this court.

■ However, the court finds that, even assuming that all facts alleged in the complaint are true, they do not state a claim for a taking. There is an important distinction between a compensable taking and a valid forfeiture. A compensable taking involves the appropriation of private property for public use under powers of eminent domain. A valid forfeiture involves the regulation of property and "seeks to prevent the continued use of private property in ways detrimental to organized society." *Eversleigh v. United States,* 24 Cl.Ct. 357, 359 (1991) (citing *Noel v. United States,* 16 Cl.Ct. 166, 170 (1989)). This court has held on numerous occasions that a valid forfeiture under the nation's drug laws is regulatory in nature and does not implicate the Takings Clause. *See, e.g., Perry v. United States,* 28 Fed.Cl. 82, 84 (1993) ("Court of Federal Claims has rejected the notion that the seizure and administrative forfeiture of money, pursuant to federal seizure and forfeiture statutes, is a compensable fifth amendment taking"); *Noel,* 16 Cl.Ct. at 170 (citing *Golder v. United States,* 15 Cl.Ct. 513, 518 (1988); *Torres v. United States,* 15 Cl.Ct. 212, 215–16 (1988); *LaChance v. United States,* 15 Cl.Ct. 127, 130 (1988)). Moreover, the Supreme Court has recently stated that "the government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Michigan,* — U.S. —, —, 116 S.Ct. 994, 1000, 134 L.Ed.2d 68 (1996) (citing *United States v. Fuller,* 409 U.S. 488, 492, 93 S.Ct. 801, 804, 35 L.Ed.2d 16 (1973)). Thus, the plaintiff cannot state a claim for a compensable taking under the Fifth Amendment if the property was lawfully forfeited to the Government.

■ In this case, however, the real gravamen of the complaint is that the forfeiture was procedurally defective because the agency administratively forfeited property in the face of a timely claim. The claim is that the DEA should have transmitted the forfeiture proceedings to the United States Attorney for appropriate action in a federal district court. Thus, plaintiff's argument is that the DEA acted contrary to law by forfeiting the property. To state a takings claim in this court, however, the plaintiff must concede the lawfulness of the actions of the Government that resulted in the alleged "taking." *Florida Rock Indus., Inc. v. United States,*

791 F.2d 893, 898 (Fed.Cir.1986) *cert. denied,* 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987); *Eversleigh,* 24 Cl.Ct. at 359; *Torres,* 15 Cl.Ct. at 215–16. The allegation must not be that the Government's conduct in and of itself violated law, but that the effect of a valid exercise of sovereign authority resulted in the taking of private property for public use, but without payment. Here, the plaintiff has alleged in her complaint that the DEA acted outside its legitimate authority by forfeiting the property in violation of agency regulations.[3] This allegation puts the claim outside a taking context. To concede the validity of the forfeiture in this case would concede the merits of the claim as well.

This court is aware of the decision in *Froudi v. United States,* 22 Cl.Ct. 290 (1991), and respectfully disagrees with it. In *Froudi,* the court held, under similar circumstances, that the Claims Court would retain jurisdiction and stay proceedings over a claim for a compensable taking, while the district court determined the validity of the forfeiture in question. Although the plaintiff's claim included the assertion that he was not given adequate notice prior to forfeiture, *id.* at 293, the court relied on the validity of the agents' actions in making the initial seizure and upon the general authority given by the forfeiture statute itself. This focus yielded a finding that there was no challenge by the plaintiff as to the DEA's authority to act.

The view of this court, however, is that the appropriate focus is whether the DEA and its agents were authorized to administratively forfeit this particular property, not simply whether there was valid authority to make the initial seizure or whether the statute gives apparent authority to administratively forfeit property. The Constitution should not be invoked to force the Government, in effect, to purchase property if the challenged action is not in accordance with law for other reasons. *See generally Del–Rio Drilling*

*Programs, Inc. v. United States,* No. 569–86L, 37 Fed.Cl. 157 (Fed.Cl. Jan. 15, 1997). As discussed below, the proper forum to correct a defective exercise of sovereign powers, at least with respect to forfeitures, is the district court.

The court has also considered the decision in *Bowman v. United States,* 35 Fed.Cl. 397 (1996), and concludes that it is arguably distinguishable. There, after his conviction of a drug offense, the plaintiff's property was forfeited in a civil forfeiture action brought in the district court. The plaintiff contended that the civil forfeiture constituted a violation of the Double Jeopardy Clause because it arose out of facts also leading to the criminal conviction. The court found that it was sufficient for maintenance of a takings claim that the district court had authority to act under the forfeiture statute.[4] *Bowman* is thus distinguishable from *Froudi,* in that the plaintiff's challenge was not to the particular way in which the Government acted. The plaintiff could concede that the district court acted in accordance with procedural requirements, and yet maintain his underlying argument that even a procedurally valid forfeiture would violate the Double Jeopardy Clause.

In both this case and *Froudi,* however, the challenge is to the way in which sovereign power has been exercised in the particular circumstances. Conceding the validity of the Government's power to act under those circumstances would be fatal. If the forfeiture was not improper for the reasons asserted in both cases, i.e., if the plaintiffs did not in fact submit timely claims, then the agency acted in accordance with its own procedures and there would be no grounds for relief. The court holds that the taking claim should be dismissed for failure to state a claim on which relief can be granted.

*3. Violations of Statutory and Procedural Rights*

 The constitutional implications of plaintiff's allegations have been addressed.

---

**3.** Alternatively, Ms. Crocker could allege that DEA agents acted beyond the scope of their authority. This, in any event, might state a tort claim, but it would not be adjudicable here.

**4.** The *Bowman* court went on, however, to find that, under *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), the plaintiff could not show an "expectation of compensability" for the forfeited property, and thus could not prevail in his takings claim.

She also contends, however, that the DEA's actions violated procedures mandated by the Controlled Substances Act and its attendant regulations. Such an allegation may invoke the district court's federal question jurisdiction under 28 U.S.C. § 1331. Once such jurisdiction attaches, those courts are able to review the agency's actions pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706 (1994), and grant relief other than money damages. As the Supreme Court has held, "[a]gency violations of their own regulations, whether or not also in violation of the Constitution, may well be inconsistent with the standards of agency action which the APA directs the courts to enforce." *United States v. Caceres,* 440 U.S. 741, 754, 99 S.Ct. 1465, 1472, 59 L.Ed.2d 733 (1979).

■ The Court of Federal Claims does not have general federal question jurisdiction, however, and it is well established that the APA is not an independent basis for this or any other court to exercise jurisdiction over claims for money. *See Union Bank & Trust Co. v. United States,* 27 Fed.Cl. 403, 404 (1992) (citing *Berry,* 27 Fed.Cl. at 102–03), *aff'd,* 6 F.3d 788 (Fed.Cir.1993). *See also Allred v. United States,* 33 Fed.Cl. 349, 350–51 (1995) (APA does not provide for money relief, thus no jurisdiction in the Court of Federal Claims). Accordingly, there is no basis for this court to review the underlying question of whether the DEA violated statutes or regulations in forfeiting the property at issue.

### 4. Unlawful Exactions

■ Although not directly raised in the complaint, one final avenue for this court's exercise of jurisdiction must be explored in light of a recent decision by the Federal Circuit. In its seminal decision in *Eastport,* the Court of Claims outlined two types of noncontract-based money claims envisioned by the Tucker Act. The more commonly asserted is that a statute, regulation, or con-stitutional provision mandates the payment of money to persons in plaintiff's circumstances. *Eastport,* 178 Ct.Cl. at 606. An example would be a claim brought under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 (1994). *See, e.g., Saraco v. United States,* 61 F.3d 863, 866 (Fed.Cir.1995); *Adam v. United States,* 26 Cl.Ct. 782, 785 (1992) ("The ... [Fair Labor Standards Act] is plainly a 'money-mandating' statute within the contemplation of the Tucker Act.").

A second type of statutory claim was also identified. A claim can be maintained in this court "where money or property has been paid [to] or taken [by the Government, and] ... the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Eastport,* 178 Ct.Cl. at 605. The court in *Eastport* suggested that "illegal exaction" as grounds for exercising Tucker Act jurisdiction can be traced to tax refund cases and "many others."[5] *Id.* at 605. *See also United States v. Emery, Bird, Thayer Realty Co.,* 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825 (1915). Such claims would appear to be the analogue of the first type of statutory claims for money. In the first type, the parties disagree about the claimant's entitlement, pursuant to a statute, to an affirmative payment from the Government. In the latter, the Government, under color of statute, demands and receives money from the claimant. In both cases the parties disagree about the correct interpretation of a statute.

While the illegal exaction prong of *Eastport* has seen little subsequent development, the recent opinion of the Federal Circuit in *Litzenberger v. United States,* 89 F.3d 818 (Fed.Cir.1996), as well as this court's decision in *Bowman v. United States,* 35 Fed.Cl. 397 (1996), strongly suggest that a wrongful forfeiture can constitute an "illegal exaction" sufficient to invoke Tucker Act jurisdiction. In *Bowman,* the plaintiff's property was forfeited to the United States pursuant to a civil

---

5. The "other" cases cited in *Eastport* include *A.H. Bull S.S. Co. v. United States,* 123 Ct.Cl. 520, 108 F.Supp. 95 (1952) (payment of deposit under Merchant Ship Sales Act of 1946); *Pan American World Airways, Inc. v. United States,* 129 Ct.Cl. 53, 122 F.Supp. 682 (1954) (agency assessed fine against airline for costs to government of detain-ing immigrants brought to the United States on the airline's aircraft); and *Gmo, Niehaus & Co. v. United States,* 139 Ct.Cl. 605, 153 F.Supp. 428 (1957) (money damages for improper governmental seizure of New York bank deposits of a foreign corporation).

forfeiture proceeding brought in the federal district court under 21 U.S.C. § 881. The judgment of forfeiture was affirmed on appeal. The plaintiff contended that the judicial forfeiture violated the Double Jeopardy Clause. This court, citing *Eastport*, stated that the plaintiff had pled the necessary elements of a Tucker Act claim: "(1) that money[6] was taken by the Government and (2) that a provision of the Constitution was violated in doing so." *Bowman*, 35 Fed.Cl. at 401. However, the court found that it could not exercise such jurisdiction because granting relief would require it improperly to second-guess the decisions of the district court and the court of appeals. *Id.* at 401–02.

In *Litzenberger*, the plaintiff's automobile was seized and administratively forfeited by the Federal Bureau of Investigation pursuant to the Controlled Substances Act. The plaintiff then challenged the forfeiture as a violation of the Due Process Clause and the Eighth Amendment's proscription against excessive fines, and sought money damages for their violation. The asserted basis for jurisdiction was the "little" Tucker Act, 28 U.S.C. § 1346. The district court exercised jurisdiction but rejected plaintiff's arguments and granted summary judgment for the Government. *Litzenberger v. United States*, No. 93–6488, 1994 WL 568486 (E.D.Pa. Oct. 11, 1994).

On appeal, the Government argued that the district court did not have jurisdiction under the little Tucker Act to award money damages for violation of either the forfeiture statute or the constitutional provisions invoked. The Federal Circuit disagreed in part:

The government contends that the Eighth Amendment prohibition against excessive fines does not constitute a money mandating provision of the Constitution. We need not pursue that issue, however, because we conclude that the forfeiture statute provides a substantive right for money damages in situations in which a penalty is improperly exacted. An analo-

gous situation arose in *Trayco*, in which an importer brought suit in district court alleging that the United States Customs Service improperly assessed an import penalty under 19 U.S.C. § 1592(a), (c). *Trayco*, 994 F.2d at 834. As in this case, the government contended that the district court lacked subject matter jurisdiction. *Id.* at 835. This court rejected the government's argument and held that the district court properly exercised jurisdiction under 28 U.S.C. § 1346(a)(2). We explained: "The refund of a penalty improperly exacted pursuant to an Act of Congress is a substantive right for money damages. Thus, Trayco satisfied the requirements for jurisdiction in federal district court under the Tucker Act." *Id.* at 837–38 (citations omitted).

In the present case, Mr. Litzenberger similarly alleges that by forfeiting his car, the FBI improperly assessed and exacted a penalty pursuant to an Act of Congress, namely the Controlled Substances Act. *See* 21 U.S.C. § 881 (1994). In the judicial condemnation proceedings contemplated by that Act, Mr. Litzenberger would be entitled to money damages if a district court concluded that forfeiture of his car would be improper. *See* 19 U.S.C. § 1608 (1994). Therefore, the district court properly exercised jurisdiction under the Little Tucker Act to address the merits of Mr. Litzenberger's claim.

*Litzenberger*, 89 F.3d at 820. Mr. Litzenberger having waived "money damages" in excess of $10,000, jurisdiction attached.

The *Litzenberger* court placed reliance on its earlier decision in *Trayco, Inc. v. United States*, 994 F.2d 832 (Fed.Cir.1993). *Trayco* also involved an appeal from a district court acting pursuant to its Tucker Act jurisdiction. That case involved a challenge by an importer to the imposition by the Customs Service of a penalty of less than $10,000 for allegedly false statements made by the importer. The district court found that there

---

**6.** Although it was Mr. Bowman's personal property rather than money that was taken from him by the Government, the court cited *Eastport* and *Aerolineas v. United States*, 77 F.3d 1564 (Fed. Cir.1996), for the proposition that illegal exac-

tion jurisdiction attaches where money is paid "directly or in effect." *Bowman*, 35 Fed.Cl. at 401. The court in *Bowman* thus found that the money was paid "in effect."

was no factual basis for the penalty that had been imposed pursuant to 19 U.S.C. § 1592(a), (c). The focus of the Federal Circuit opinion is whether the district court correctly exercised jurisdiction, in light of the exclusive jurisdiction of the Court of International Trade over certain custom and import matters. After finding that the latter court's exclusive jurisdiction was not violated, the appellate court found that the district court properly exercised jurisdiction under the Tucker Act by utilizing the *Eastport* "illegal exaction" theory. It explained that "[t]he refund of a penalty improperly exacted pursuant to an Act of Congress is a substantive right for money damages." *Litzenberger*, 89 F.3d at 820 (quoting *Trayco*, 994 F.2d at 837–38). The *Trayco* decision is immediately reminiscent of Tucker Act claims for refund of taxes and penalties exacted by the Internal Revenue Service. The exaction of money as a penalty under color of a customs statute would appear to be squarely within the *Eastport* "illegal exaction" analysis.

Drawing from this precedent, the *Litzenberger* court refers to the forfeiture statute as also exacting comparable "penalties," *id.* at 820, a demand for the return of which can provide grounds for Tucker Act jurisdiction. The Supreme Court has said that a forfeiture proceeding, being an action in rem, is not in principle a penalty against the person. *See, e.g., United States v. Ursery,* — U.S. —, —, 116 S.Ct. 2135, 2140–41, 135 L.Ed.2d 549 (1996) (citing *Various Items of Personal Property v. United States,* 282 U.S. 577, 581, 51 S.Ct. 282, 283–84, 75 L.Ed. 558 (1931) ("A forfeiture proceeding ... is *in rem.* It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. . . . The forfeiture is no part of the punishment for the criminal offense.")). In a forfeiture proceeding, the property may be forfeited despite the fact that the actual owner of the property did not violate the law. The property rather

than the person is seen as guilty.[7] Whatever its provenance, however, the Federal Circuit's opinion in *Litzenberger* plainly stands for the proposition that district courts can exercise jurisdiction under 28 U.S.C. § 1346(a)(2) over claims for money damages for violation of the forfeiture laws.

The court then turned to the merits of this Tucker Act claim. The court first rejected the plaintiff's claim of a violation of the Eighth Amendment prohibition on excessive fines. By not having filed a claim within twenty days, as required by the forfeiture statute, "an essential statutory predicate ... [was] absent and the district court should [have] refuse[d] to evaluate the merits of any substantive argument." *Litzenberger*, 89 F.3d at 821. The Federal Circuit then went on, however, to address the contention that the notice plaintiff received was inadequate because it violated the Due Process Clause of the Fifth Amendment. Although the court ultimately rejected the contention, it is not clear what remedy the court would have afforded if a violation had been found. Violations of the Due Process Clause consistently have been held not to afford a right to money damages. *See supra* Part 1.

The court's reference to 19 U.S.C. § 1608 as granting a right to money damages if a district court concludes the forfeiture was improper is not clear. *See Litzenberger*, 89 F.3d at 820. The statute does not, on its face, create such a right. Instead it merely sets out the circumstances in which an alleged owner can preclude administrative forfeiture by filing a claim, posting bond, and forcing judicial resolution. The court cites no decisions to support the proposition that money damages may be awarded as part of a judicial determination that a forfeiture was improper. The trial court in *Litzenberger*, however, does reference some of the decisions outside of this circuit in which the Tucker Act has been invoked to support a demand in the alternative, either for return of improperly forfeited property, or payment

---

7. In *Ursery*, the court teaches that:
 "[There is a] sharp distinction between *in rem* civil forfeitures and *in personam* civil penalties such as fines. . . . [T]he conclusion was the same in each case: *in rem* civil forfeiture is a remedial civil sanction, distinct from potential- ly punitive *in personam* civil penalties such as fines, and does not constitute a punishment under the Double Jeopardy Clause."
 *Ursery,* — U.S. at —, —, 116 S.Ct. at 2141, 2142.

of the value of such property. *See, e.g., Vance v. United States*, 676 F.2d 183, 187 (5th Cir.1982); *Menkarell v. Bureau of Narcotics*, 463 F.2d 88, 91 (3rd Cir.1972); *Korkala v. United States Customs Service*, No. 86–3063, 1989 WL 28678 (D.N.J.1989). These decisions and others have taken a considerably broader view of how the Tucker Act interacts with other constitutional or statutory provisions than that adopted by this circuit in the past. For example, in *Onwubiko v. United States*, 969 F.2d 1392, 1398–99 (2d Cir.1992), the court heard an appeal from forfeiture of currency:

> [I]f an administrative forfeiture is procedurally deficient, the court has jurisdiction to correct the deficiency.... Further, the district court has jurisdiction ... under the Tucker Act, 28 U.S.C. § 1346, which gives district courts original jurisdiction over various claims against the United States which do not exceed $10,000. Reading Onwubiko's pro se filings in the most favorable light possible, *see, e.g., LaBounty v. Adler*, 933 F.2d [121], 122 [(2d Cir. 1991)], we conclude that Onwubiko has presented a claim for deprivation of property without due process, as well as a claim for abuse of agency discretion under its own regulations. Thus, he has a civil "claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any act of Congress, or any regulation of an executive department". 28 U.S.C. § 1346(a)(2).

There are cases the other way, *see, e.g., Willis v. United States*, 600 F.Supp. 1407 (D.Ill.1985), but the clear majority support district court jurisdiction under the Tucker Act.

■ On the face of things, the *Litzenberger* decision would suggest that jurisdiction should rest in this court as well to adjudicate monetary damages flowing from a defective forfeiture. This is so because, other than the dollar limit on district court jurisdiction, there is no difference between the "little" and "big" Tucker Act. There was only one Tucker Act. 24 Stat. 505 (1887). Over time it has been split through separate codification, but the grounds for exercising power are the same in both courts. *See Wyatt v.*

*United States*, 2 F.3d 398, 400 n. 3 (Fed.Cir. 1993) ("The Little Tucker Act is a jurisdictional statute and does not by itself create a substantive right enforceable against the United States for money damages.") (citing *Testan*, 424 U.S. at 398, 96 S.Ct. at 953). Moreover, as the Supreme Court has taught, "'[T]he Tucker Act did no more than authorize the District Court to sit as a court of claims and ... the authority thus given to adjudicate claims against the United States does not extend to any suit which could not be maintained in the Court of Claims.'" *Richardson v. Morris*, 409 U.S. 464, 466, 93 S.Ct. 629, 631, 34 L.Ed.2d 647 (1973) (quoting *United States v. Sherwood*, 312 U.S. 584, 591, 61 S.Ct. 767, 771–72, 85 L.Ed. 1058 (1941)). It follows that a necessary inference from *Litzenberger* is that this court has jurisdiction over actions to recover the value of property allegedly improperly forfeited.

The Government, in its supplemental briefing to the court, urges the court to limit the effect of *Litzenberger* to the district courts. It does this in two ways. First, it contends that the real holding is that, what appears to be monetary relief under the Tucker Act, is really the district court's exercise of its federal question jurisdiction to review the adequacy of notice. There are two problems with this suggestion. The first is that it is at odds with the language of *Litzenberger*, which squarely places the source of jurisdiction within the Tucker Act. The second is that it does not explain how the district court would have been permitted to award money damages.

The Government argues in the alternative that, even if the Federal Circuit intended to rely on the Tucker Act as a necessary jurisdictional prerequisite, this court could not exercise similar jurisdiction, due to the commitment of forfeiture proceedings, by statute, to the district court. This contention has merit.

*Eastport*'s explanation of illegal exaction jurisdiction was not without limitations. The court stated that "'suit can be brought in this court to recover [such] exactions said to have been illegally imposed by federal officials (except where Congress has expressly placed jurisdiction elsewhere.)'" *Eastport,*

178 Ct.Cl. at 606, 372 F.2d 1002 (quoting *South Puerto Rico Sugar Trading Co. v. United States,* 167 Ct.Cl. 236, 244, 334 F.2d 622, 626 (1964), *cert. denied,* 379 U.S. 964, 85 S.Ct. 654, 13 L.Ed.2d 558 (1965)). Thus, *Eastport* limits illegal exaction jurisdiction in this court by recognizing that Congress may decide to place jurisdiction over specific types of claims elsewhere. In this case, there is evidence that Congress has expressed a desire to place forfeiture actions and related decisions within the district courts rather than with the Court of Federal Claims.[8]

*Bowman* did not specifically address *Eastport*'s limiting language. *Litzenberger,* because it involved a district court, had no occasion to do so. The obvious flaw in this analysis, of course, is that the court in *Eastport* presumably contemplated an alternative remedy, as well as an alternative forum. In the case of district court jurisdiction over forfeiture actions, a Tucker Act money remedy would be limited to $10,000. Cases such as the present one would be beyond the Tucker Act jurisdiction of the district court, and thus cannot be said to have been committed to another forum.

Nevertheless, what has clearly been committed to resolution in an alternative forum are all the potential issues—constitutional, statutory, and regulatory—that surround forfeiture, other than the Tucker Act remedy itself. For this court to assume jurisdiction over a claim which requires an initial finding of a violation of such a provision, the court would squarely be in an area dedicated to the district courts. Unlike this court, the district courts have jurisdiction over civil forfeiture proceedings, as well as general federal question jurisdiction, and thus have access to the many potential grounds for attacking the validity of forfeitures, including lack of notice. In exercising that jurisdiction, these courts have been creative in fashioning appropriate remedies outside the context of Tucker Act jurisdiction. Moreover, the Supreme Court has recently held that district court jurisdiction over the assets forfeited is not lost due to sale of the assets. *Republic Nat'l Bank of Miami v. United States,* 506 U.S. 80, 88–89, 113 S.Ct. 554, 559–60, 121 L.Ed.2d 474 (1992) (also stating that 31 U.S.C. § 1304 and 28 U.S.C. § 2465, when read together, would authorize the payment of money to person whose property was wrongfully forfeited and converted to proceeds). It is not even clear to this court why, given these broad powers, a money damages remedy under the Tucker Act is even necessary.[9] It is, in any event, the view of this court that the desirability of pursuing the broad equitable relief available in the district courts should preclude persons affected by forfeitures from moving directly to a Tucker Act remedy.

In short, this court has serious reservations about applying *Litzenberger* and the line of decisions it embraces to this court. Because the Federal Circuit has not yet said that the Court of Federal Claims can exercise similar jurisdiction, that decision is not, technically, direct precedent. Absent a more

---

8. There are numerous examples, both in the Controlled Substances Act and in the analogous customs laws, that provide evidence of such a statutory scheme. *See, e.g.,* 21 U.S.C. § 881(b) (seizure warrant may be issued by a federal district court); 21 U.S.C. 882 (federal district courts have jurisdiction to issue injunctions for the violation of the provisions of the Controlled Substances Act); 21 U.S.C. § 888 (Attorney General shall file a complaint for forfeiture of a conveyance seized for a drug-related offense in "the appropriate district court"); 19 U.S.C. § 1604 (duty of Attorney General of the United States to commence and prosecute forfeiture proceedings in a federal district court when such proceedings are necessary); 19 U.S.C. § 1608 (United States Attorney for the district in which the property was seized may institute judicial forfeiture proceedings); 19 U.S.C. § 1609 (administrative forfeiture "shall have the same force and effect" as

a judicial forfeiture resulting from a "proceeding in a district court of the United States").

9. For example, the trial judge in *United States v. $277,000 U.S. Currency,* 69 F.3d 1491 (9th Cir. 1995), ordered the payment of money into court as a substitution for the res, which had been disposed of by the Government. The res, of course, can be returned. The appellate court there awarded lost interest. There is also precedent for the district court to order the return of monies improperly forfeited without invoking the Tucker Act. *See United States v. Aiello,* 912 F.2d 4 (2d Cir.1990). Indeed, the Supreme Court has recognized that district courts may, outside the Tucker Act, order the return of money as a logical extension of declaratory relief. *See Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

clearly articulated indication from the Federal Circuit that Tucker Act claims for wrongful forfeiture actions can be brought in this court, we decline to read *Litzenberger* as granting jurisdiction over claims for wrongful forfeiture. To the extent the decisions in other circuits squarely hold the Tucker Act creates a money remedy for violations of the forfeiture statutes, we respectfully disagree. While this court has jurisdiction over illegal exaction claims, as expressed in *Eastport,* that jurisdiction is limited when, as in this case, the Congress has expressed a clear intent to place jurisdiction elsewhere.

### Conclusion

For the reasons stated above, the defendant's motion for summary judgment is granted. Plaintiff's claims for relief based on violations of the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the forfeiture statutes are dismissed for lack of subject matter jurisdiction. Plaintiff's claims pursuant to the Takings Clause of the Fifth Amendment and for an illegal exaction are dismissed for failure to state a claim upon which this court can grant relief. The Clerk is ordered to dismiss the complaint. No costs.