**VEREDA, LTDA., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 96–256C.

United States Court of Federal Claims.

Aug. 18, 1999.

---

Mark L. Whitaker, Shaw Pittman, Potts & Trowbridge, Washington, D.C., for plaintiff.

Kathie A. Whipple, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C. for defendant, with whom was Kirk T. Manhardt, Assistant Director, David M. Cohen, Director, and Frank W. Hunger, Assistant Attorney General.

### Revised Order

SMITH, Chief Judge.

This case is before the court on defendant's Motion to Reconsider the court's opinion of August 13, 1998, granting in part and denying in part defendant's Motion To Dismiss. That opinion concerned the Drug Enforcement Agency's (DEA) seizure of a 1978 Rockwell Commander aircraft (hereinafter "the airplane"), and the attempts of those financially interested in that airplane to seek redress for the seizure. Two counts from Plaintiff's First Amended Complaint survived the Motion to Dismiss: Count I, alleging an Illegal Exaction; and Count II, alleging a violation of the Takings Clause.

The facts are discussed at length in the court's original opinion in this case. *See Vereda Ltda. v. United States,* 41 Fed.Cl. 495 (1998). Briefly, Vereda Ltda. (Vereda), a Columbian limited partnership, was engaged by Aeroexpreso de la Frontera (Aeroexpreso), another Columbian limited partnership, to buy an airplane located in the United States from Export–Air Corp. (Export–Air). Vereda purchased the airplane, and subsequently acquired a mortgage interest in the airplane, when Aeroexpreso agreed to pay Vereda only half of the purchase price prior to the airplane's arrival in Columbia. On August 6, 1993, the DEA seized the airplane when it was brought into the United States. The seizure warrant was based on probable cause to believe that the airplane was going to be used to facilitate the possession and transportation of cocaine, in violation of 21 U.S.C. § 881(a)(4), and probable cause that the airplane represented proceeds of illegal drug transactions, in violation of 21 U.S.C. § 881(a)(6).

On October 28, 1993, Aeroexpreso filed a claim of owner and cost bond to protest the forfeiture of the airplane. The DEA rejected it as untimely. The airplane was then administratively forfeited on November 19, 1993 under 21 U.S.C. § 881 and 19 U.S.C. §§ 1607–1609. Aeroexpreso and Vereda both filed petitions for remission of the for-

feiture which were denied. Separate petitions for reconsideration were subsequently denied.

While the DEA's decisions on the petitions for remission were pending, Aeroexpreso filed a complaint in the U.S. District Court for the Southern District of Florida seeking return of the airplane. All counts were dismissed for lack of jurisdiction by the district court in an unpublished opinion rendered on June 28, 1994. Export–Air also filed a complaint in the Southern District of Florida, seeking review on the merits of the DEA's forfeiture decision, alleging that it received insufficient notice of the forfeiture under 19 U.S.C. § 1607(a). The district court granted summary judgment to the government, holding it lacked jurisdiction to review the DEA's action, and that Export–Air had received statutorily and constitutionally sufficient notice.

On May 6, 1996, plaintiff filed its complaint in this court. An amended complaint was filed on June 21, 1996. Defendant filed its motion to dismiss on August 5, 1996. This court issued an opinion on August 13, 1998, dismissing Count III of plaintiff's complaint, but denying defendant's motion as to Counts I and II. The Court now vacates its opinion as to Count I, and GRANTS defendant's motion as to Count I. For the reasons set forth below, the court denies defendant's motion as to Count II.

## DISCUSSION

### I. COUNT I: DEA Seizure of the Airplane Constituted an Illegal Exaction

In our August 13, 1998 opinion, the court denied defendant's Motion to Dismiss as to Count I because if the government provided insufficient notice to plaintiff of the seizure of the plane, and accordingly of Vereda's mortgage interest, this would render the seizure an illegal exaction.

The Court held that it possessed jurisdiction over plaintiff's illegal exaction claim despite a series of nonbinding Claims Court cases which suggested the Tucker Act does not grant jurisdiction over claims arising from the DEA's authority under 21 U.S.C. § 881 (1988 & Cum. Supp. 1997). *See Vereda*, 41 Fed.Cl. at 498–99 (citing *LaChance v.*

*United States*, 15 Cl.Ct. 127 (1988)); *Noel v. United States*, 16 Cl.Ct. 166 (1989); *Lark v. United States*, 17 Cl.Ct. 567 (1989). The court found jurisdiction based on the Federal Circuit's holding in *Aerolineas Argentinas*, 77 F.3d 1564 (Fed.Cir.1996), which "concluded that the agency's misapplication of the governing law and regulations, which imposed costs upon the plaintiff airlines, constituted an illegal exaction of moneys to meet an obligation of the government." *See Vereda*, 41 Fed.Cl. at 501 (citing *Aerolineas*, 77 F.3d at 1578). Plaintiff's claim, alleging the violation of the Controlled Substances Act, appeared to meet this definition.

Plaintiff claimed that it did not receive timely notice of the DEA's administrative forfeiture proceeding. Although the district court in a related proceeding found Aeroexpreso had received timely notice, and that Mr. Sole, plaintiff's attorney, was given timely notice on August 6, 1993, the district court did not address the issue of whether plaintiff had actual notice. The DEA sent written notice to plaintiff on October 14, 1993, nine days after the October 5, 1993 cutoff date to contest the seizure and administrative forfeiture.

Accordingly, the question for this court was whether or not plaintiff had received sufficient notice to contest the forfeiture. The court looked to several federal appeals court decisions from outside this circuit to determine the standard for notice in forfeiture cases. *See Vereda*, 41 Fed.Cl. at 503–04 (citing *Sarit v. DEA*, 987 F.2d 10 (1st Cir.), *cert. denied*, 510 U.S. 888, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993); *Muhammed v. DEA*, 92 F.3d 648, 653 (8th Cir.1996) ("required notice is clearly focused on instructing parties not yet contesting the forfeiture in court what procedures must be followed"); *Aero–Medical Inc. v. United States*, 23 F.3d 328, 330–31 ("[I]t was unacceptable for the DEA to rely upon notice by publication while failing to use the information it possessed from the beginning of the forfeiture process to notify plaintiff."); *United States v. Woodall*, 12 F.3d 791, 794 (8th Cir.1993)).

Plaintiff's situation did not precisely fit these precedents for notice, however, because the allegation was that, despite notice

to plaintiff's attorney, plaintiff itself had not received notice. The court noted, "[t]he October 14, 1993 notice did not apprise Vereda of the action so that they could object—the seizure was complete and uncontestable by October 5. The remaining question, then, is this: assuming that defendant knew that Mr. Sole was Vereda's attorney, did the verbal notice of seizure given to Mr. Sole on August 6, 1993 constitute sufficient notice to Vereda?" *Vereda,* 41 Fed.Cl. at 503. In its opinion, the court concluded, "An evidentiary proceeding is necessary to determine what notice plaintiff actually had from its attorney, and what that attorney's relationship was to Vereda with respect to this matter." *Id.* at 504.

Defendant filed an untimely Motion to Reconsider on November 5, 199.8. Plaintiff filed a Reply on December 10, 1998. Defendant's contention that the Declaration of John Hieronymus attached to its motion sufficiently responds to the court's concerns about notice is disputed by plaintiff. Mr. Hieronymus' statements, assuming their truth, go to notice after the October 5, 1993 cutoff date. Defendant argues, however, that the DEA offered Vereda twenty additional days to submit a claim and cost bond, and that Vereda did not file within that extended deadline. Plaintiff contends that the Motion to Reconsider "fails to address why notice was never sent directly to Vereda as required by statute," *see* Plaintiff's Reply at 4, and that it ignores the court's ruling that an evidentiary proceeding is necessary.

■ Without deciding the above issues, the court sees a greater difficulty in its earlier opinion which Defendant's Motion to Reconsider did not address. It is the question of the court's jurisdiction to hear the Illegal Exaction Count. Questions of jurisdiction may be raised at any time in the proceeding, and the court may do so on its own motion. *See Fanning, Phillips and Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998) ("A party, or the court sua sponte, may address a challenge to subject matter jurisdiction at any time, even on appeal.") (quoting *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir. 1993)). In fact, this court is duty bound to do so.

■ In *Crocker v. United States,* 37 Fed. Cl. 191 (1997) (*Crocker I* ), the Court of Federal Claims addressed a similar case to the one at bar. There, a sheriff had arrested the plaintiff's husband for possession of controlled substances and seized certain property at the plaintiff's residence pursuant to a search warrant. *See id.* at 193. The seized property was turned over to the DEA pursuant to the Controlled Substances Act. The DEA published a notice, and subsequently denied the plaintiff's claim of ownership of the property as untimely. *See id.* The plaintiff claimed a violation of the DEA's procedures because she allegedly filed her claim of ownership in timely fashion. *See id.* at 194. The plaintiff in *Crocker I* claimed (in effect), that this violation of regulations constituted a Fifth Amendment Taking, *see id.* at 195, and an Illegal Exaction. *See id.* at 197.

The trial court dismissed the Illegal Exaction count on the theory that questions of notice were committed by Congress to the district courts. *See id.* at 201 ("Cases such as the present one would be beyond the Tucker Act jurisdiction of the district court, and thus cannot be said to have been committed to another forum. Nevertheless, what has clearly been committed to resolution in an alternative forum [from the Court of Federal Claims] are all the potential issues—constitutional, statutory, and regulatory—that surround forfeiture, other than the Tucker Act remedy itself.").

On appeal, the Federal Circuit affirmed, holding that "[t]he relief that Crocker wants requires that a district court evaluate the adequacy of notice provided before the agency ordered her assets forfeited.... Congress has unambiguously allocated these judicial activities to the district courts." See *Crocker v. United States,* 125 F.3d 1475, 1477 (Fed.Cir.1997) (*Crocker II* ).

It would be impossible for this court to determine the merits of plaintiff's.illegal Exaction count without an evidentiary hearing as to the adequacy of notice. The Federal Circuit's *Crocker II* opinion, however, clearly prohibits this court from hearing claims for illegal exactions in forfeiture cases based

upon failure of notice to the injured party. Accordingly, the portion of the court's August 13, 1998 opinion in this case dealing with the illegal exaction of Vereda's property is vacated, and the illegal exaction count is dismissed.

## Count II: Fifth Amendment Takings

■ Plaintiff's Takings Count, as the court understands it, is unrelated to the adequacy of notice of the forfeiture action. The issue, rather, is whether or not plaintiff possessed property rights which were taken in violation of the Fifth Amendment. Harsh as this may seem, there is no taking merely because the owner of property used in a crime happens to be innocent. *See Bennis v. Michigan*, 516 U.S. 442, 449–50, 452, 116 S.Ct. 994, 999, 1001, 134 L.Ed.2d 68 (1996) (rejecting innocent-owner defense, and holding that where due process is not violated by forfeiture statute, there can be no taking). Where the owner and the property are "innocent", however, it seems that a compensable taking may occur. *See Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689–90, 94 S.Ct. 2080, 2094–95, 40 L.Ed.2d 452 (1974) (suggesting a forfeiture might be unduly oppressive in the case of an owner "who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property.").

■ *Crocker I* held that a takings claim on its facts could not survive in this court because a plaintiff must concede the validity of the procedures which led to the particular government forfeiture, which was the basis of the claim. A plaintiff with a takings claim in the Court of Federal Claims "must concede the lawfulness of the government actions that resulted in the alleged 'taking.'" *See Crocker I*, 37 Fed.Cl. at 195. If the plaintiff does not make such a concession the exclusive jurisdiction must lie in the district court on the due process issue. The *Crocker I* court did however note an exception among our takings precedents in *Bowman v. United States*, 35 Fed.Cl. 397 (1996), a case in which a plaintiff claimed a civil forfeiture violated the Double Jeopardy Clause, and thus, the Fifth Amendment Takings Clause. The

*Crocker I* court explained, "The [Bowman] plaintiff could concede that the district court acted in accordance with procedural requirements, and yet maintain his underlying argument that even a procedurally valid forfeiture would violate the Double Jeopardy Clause." *See Crocker I*, 37 Fed.Cl. at 196. Thus, procedurally proper forfeitures may still be compensable under the Tucker Act.

At first glance, this case appears to fall within the same exception as *Bowman*. Plaintiff is not alleging procedural improprieties in its Takings Count. Those improprieties can only be resolved in district court and are thus no basis for an Illegal Exaction claim. They are, however, extraneous to the takings claim. Plaintiff argues that it was an innocent mortgagee and that "it has never been alleged that the aircraft in question was ever used in illicit activity." *See* Plaintiff's Br. at 15–16. The nature of plaintiffs-claim is developed in greater detail in the original opinion, but as was held there, plaintiff does not seek to collaterally attack the underlying district court decisions. *See Florida Rock Industries, Inc. v. United States*, 791 F.2d 893, 898 (1986) (Noting that the proper way to challenge a government decision is under the Administrative Procedure Act, and concluding, "[t]he Tucker Act suit in the Claims Court is not ... available to recover damages for unauthorized acts of government officials."). A procedurally proper forfeiture may still require compensation if there is no determination that the property was used in a crime. The only basis for the exclusion of Takings Clause liability in forfeiture cases is the "guilt" of the property.

In addition, the trial court in *Crocker I* relied in part on *Del–Rio Drilling Programs, Inc. v. United States*, 37 Fed.Cl. 157 (1997) (*Del–Rio I*) in its determination that the validity of the agents' actions in making the initial seizure and the authority provided by the forfeiture statute were insufficient to bring the takings claim within the requirement of authorized government action. *See Crocker I*, 37 Fed.Cl. at 196 ("[T]he appropriate focus is whether the DEA and its agents were authorized to administratively forfeit this particular property, not simply whether there was valid authority to make the initial

seizure or whether the statute gives apparent authority to administratively forfeit property") (citing *Del–Rio I,* 37 Fed.Cl. 157). *Del–Rio I,* however, has since been overruled by the Federal Circuit. *See Del–Rio Drilling Programs, Inc. v. United States,* 146 F.3d 1358 (Fed.Cir.1998) (*Del–Rio II* ). In *Del–Rio II,* the Federal Circuit explained, "Neither the Supreme Court nor this court has held that government conduct is 'unauthorized,' for purposes of takings law, merely because the conduct would have been found legally erroneous if it had been challenged in court." *See id.* at 1363.

The Federal Circuit made clear in *Del Rio II* that an unlawful government action may result in a taking, so long as it was within the normal scope of the government actor's duties. *See id.* at 1362–63. The key determination is whether or not the action was authorized: ultra vires acts are not the same as acts which are "authorized but nonetheless unlawful". See *id.* at 1362. In accord with *Del–Rio II,* it is possible for a taking to be unlawful, but still be a valid, authorized government action for Tucker Act jurisdictional purposes. The requirement that plaintiff must concede the authority of the government to take its property in this case does not mean that there is no possibility of just compensation. Thus, conceding the propriety of the government action does not necessarily defeat plaintiff's claim of a taking due to the forfeiture of "innocent" property. The *Crocker I* holding should be read narrowly, without casting doubt on *Bowman.*[1]

The fact that this court might generally be able to hear a takings claim like plaintiff's without questions of authorized agency action does not answer the question of whether or not we have jurisdiction over this particular type of claim, however. In *Bennis v. Michigan,* when the Supreme Court addressed the Takings claim of an innocent owner of a forfeited automobile used for a crime, the Court held:

> [I]f the forfeiture proceeding here in question did not violate the Fourteenth Amendment, the property in the automobile was

transferred by virtue of that proceeding from petitioner to the State. The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain.

516 U.S. at 452, 116 S.Ct. 994. If plaintiff's claim is based solely upon the alleged innocence of plaintiff and the forfeited airplane, then it appears that this court may not grant relief according to the *Bennis* ruling because the government action would be a lawful exercise of a power other than eminent domain.

As already noted, if plaintiffs claim is based upon a procedural error—*i.e.,* the government's failure to properly notify plaintiff—then the claim for an unlawful taking of property, although it might be compensable if plaintiff could prove the "innocence" of the airplane, would fall outside of our jurisdiction. In its *Crocker II* opinion, the Federal Circuit determined that Congress had allocated the findings of notice in forfeiture cases to district courts. *See Crocker II,* 125 F.3d at 1477. In *Del–Rio II,* the Federal Circuit recognized this exception to Tucker Act jurisdiction. *See Del–Rio,* 146 F.3d at 1367 ("There are, of course, instances in which courts find that Congress has displaced Tucker Act jurisdiction in favor of some other remedial scheme.").

One potential solution to this jurisdictional quandary would be to transfer the case to the district court in Florida, for a determination of the propriety of the forfeiture proceeding as to plaintiff. In *Froudi v. United States,* 22 Cl.Ct. 290 (1991), the Claims Court transferred equitable claims in a forfeiture case enabling a district court to determine whether plaintiff had received proper notice, and stayed the Tucker Act claim until the district court made its decision. The *Crocker I* court rejected this approach, but we are not bound by that decision. The Federal Circuit ruling in *Crocker II,* although it affirmed the trial court holding of no jurisdiction as the dispute was framed, did not address the pos-

---

1. *Crocker I* was upheld without reference to the Takings Clause arguments in that opinion. *See*

*Crocker II,* 125 F.3d 1475 (Fed.Cir.1997).

sibility, exercised in *Froudi*, of staying the case until a district court could rule on the notice issue.

The court thinks a transfer might be appropriate under these circumstances if there is a transferrable claim. Plaintiff has alleged its innocence and argues that the airplane was never determined to be guilty, but was merely seized with probable cause. Moreover, plaintiff has argued that it did not receive adequate notice to contest the forfeiture. On these facts, it is harsh to deprive plaintiff of the opportunity to seek a remedy in this court if an unlawful forfeiture can be proven in district court. Congress may have delegated the forfeiture proceedings to another court, but it also granted this court jurisdiction over damages above $10,000 for unlawful takings under the Fifth Amendment.

In its recent decision in *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999), the Supreme Court clarified the ability-of district courts to grant equitable relief which amount to money damages against the federal government under the Administrative Procedure Act. The Court held that equitable liens, although they attach to the thing, are compensatory or substitute relief which is not available under the APA, but rather under the Tucker Act or the Federal Torts Claims Act. Therefore, it may be that the only remedy for plaintiff's alleged injury is in this court, but the only way to bring suit to resolve the question of plaintiff's property rights is in a district court, such that the statute of limitations in this court expires. This would create a Catch–22 dilemma where the only court having jurisdiction does not have the power to grant any relief. Obviously, this court does not readily adopt such an answer.

The forfeiture provisions have a long history and serve an important role in the enforcement of various laws, but in some cases they may operate in an unfortunate manner. *See Bennis*, 516 U.S. at 454, 116 S.Ct. 994, 134 L.Ed.2d 68 (Thomas, J., concurring) ("This case is ultimately a reminder that the Federal Constitution does not prohibit everything that is intensely undesirable.... Im-

properly used, forfeiture could become more like a roulette wheel employed to raise revenue from innocent but hapless owners whose property is unforeseeably misused ... rather than a component of a system of justice.").

However, this court may not, as noted in *Froudi*, transfer a case to district court and retain jurisdiction over the same claim. 28 U.S.C. § 1500 requires this court to divest itself of jurisdiction where the plaintiff has a prior pending suit in another jurisdiction. Unlike *Froudi*, in which an equitable claim for return of the property could be transferred to the district court, in this case, plaintiff's claims are all for money damages. These claims, if transferred, would run afoul of 1500 if the court retained jurisdiction.

There is a another possibility, however. Plaintiff, unlike the typical owner of property forfeited as an instrumentality in a crime, is allegedly an innocent owner of a mortgage in the forfeited property. In *Shelden v. United States*, 7 F.3d 1022 (Fed.Cir.1993), the Federal Circuit awarded compensation to Carl and Mary Shelden, owners of a mortgage interest in a property which was forfeited pursuant to 18 U.S.C. § 1963. As a result of the mortgagor's guilty plea on RICO charges, all title to the property was irrevocably vested in the United States. The Federal Circuit held that the concomitant destruction of the value of the mortgage, because the forfeiture rendered the mortgage unenforceable, was a compensable taking. *See Shelden*, 7 F.3d at 1027.

Although the forfeiture in *Shelden* was in personam, serving as a punishment of the convicted mortgagor, and the forfeiture in the present case was in rem, based on the "guilt" of the property, both taking claims involve a valid forfeiture which destroyed the plaintiffs' mortgage interests. In fact, the *Shelden* court based its reasoning in part on a Fourth Circuit case, *In re Metmor Financial, Inc.*, 819 F.2d 446 (4th Cir.1987), which involved the destruction of a mortgage interest pursuant to 21 U.S.C. § 881. There, the court held that the forfeiture had transformed the mortgage holder from secured creditor to an unsecured creditor. *See id.* at 451. *See also Shelden*, 7 F.3d at 1029 n. 5

(citing other cases in agreement with *Metmor* ).

At issue in this case, unlike *Shelden,* is whether the protection of the innocent mortgage holder's rights has been allocated to the district courts by Congress. The Ninth_Circuit recently enforced an innocent mortgage holder's right against a claim of sovereign immunity by the government on the theory that the innocent lien holder was merely enforcing the statutory protection contained within 18 U.S.C. § 981(a)(2) (protecting an innocent lienholder) and 21 U.S.C. § 881(a)(6) (protecting an innocent owner). *See United States v. Lear Jet,* 38 F.3d 398, 401 (9th Cir.1994). *Lear Jet* appears to be the mortgage holder's equivalent to the property owner's proceedings which the *Crocker II* court declared are beyond this court's Tucker Act jurisdiction. However, this court must look to *Shelden's* holding, rather than *Crocker II's* implications.

The legal issues surrounding this taking claim border on the metaphysical. They deal with exceedingly fine lines. Nevertheless, the *Shelden* court made it clear that innocent mortgage holders have a compensable taking claim when their mortgage interest is destroyed by forfeiture proceedings. This case appears to fall squarely within that ruling. In light of the *Shelden* opinion, defendant's motion to dismiss Count II is denied. However, the Court notes that there is substantial ground for difference of opinion about the implications of the *Crocker II* opinion and the *Shelden* opinion, such that an interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(2) may be appropriate.

**CONCLUSION**

Plaintiff's case, No. 96–256C, survives as to Count II of its complaint. The Court dismisses Count I of the complaint and thus GRANTS the government's Motion to Dismiss in Part. Any portion of the Court's August 13, 1998 Order which conflicts with this Order is hereby VACATED.

It is so ORDERED.