**Alfernando LARK, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 119–89C.**

United States Claims Court.

July 26, 1989.

John A. Crawford, Jr., San Diego, Cal., for plaintiff.

Allen D. Bruns, Washington, D.C., with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant.

## ORDER

### MOODY R. TIDWELL, III, Judge:

This action is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. Defendant's motion alleged that plaintiff failed to state a claim based on a law mandating monetary compensation by the government, that plaintiff's claims were specifically outside of this court's jurisdiction, and that plaintiff's action would be barred by the doctrine of res judicata.

## FACTS

On July 28, 1987, plaintiff, Alfernando Lark, and two other individuals arrived at the Los Angeles International Airport on a flight from Chicago, Illinois. While attempting to leave the premises carrying two suitcases and a leather briefcase, the parties were approached by three Drug Enforcement Agency (DEA) officers. After refusing to allow the officers to search the contents of the baggage, plaintiff and his companions were detained for further identification and questioning. Plaintiff finally consented to allow a search, whereupon the officers discovered $61,880 in the briefcase, as well as $620 on plaintiff's person. Plaintiff claimed that the money would be used to purchase gold and diamonds in San Diego, which would then be taken to Indiana to sell for profit. As is routine in drug investigations, a dog especially trained to detect the presence of drugs was called upon to test the confiscated currency. Following normal procedures, the dog was placed in an empty room to check for controlled substances. None were detected. The suspect currency was then placed in a desk drawer in the same room, and the dog allowed to re-enter. The dog, attracted to the scent of drugs, alerted the officers to the money in the drawer. The money was then officially seized in accordance with 21 U.S.C. § 881(a)(6) (1982). Since plaintiff claimed ownership and full responsibility for all contents in the luggage, plaintiff is the only party involved in this dispute.

On September 8, 1987, in conformity with 19 U.S.C. § 1607 (1982 & Supp. III 1986) and 21 C.F.R. § 1316.75 (1987), the DEA Asset Forfeiture Section mailed plaintiff a notice of seizure and intent to forfeit the money. The notice informed plaintiff of his options to pursue either administrative or judicial relief and of the requisite time restraints for each option. Notice was sent to plaintiff's residence in South Bend, Indiana, and to the Los Angeles County Jail, where plaintiff had been temporarily detained for the unlawful concealment of a weapon also discovered during the airport search. A signed acknowledgment of receipt of the notice was returned to the DEA by plaintiff, dated September 25, 1987. Further notice of seizure was published for three consecutive weeks in the *USA Today* beginning September 23, 1987. 19 U.S.C. § 1607; 21 C.F.R. § 1316.75. Pursuant to regulation, plaintiff was allowed twenty days from the date of first publication of the notice to contest the forfeiture of the seized money by filing a claim of ownership in a District Court and posting a bond of $5000. *Id.* Plaintiff's attorney alleged that in mid-September he spoke with a DEA agent over the phone, who informed him that the agency did not strictly adhere to deadlines in forfeiture cases. On October 19, 1987, the DEA received the required claim and bond from plaintiff's attorney. The date on the certified check and postmark on the envelope, however, was October 14, 1987, one day beyond the twenty day limitation period established by the statute. Accordingly, the DEA Forfeiture Counsel administratively forfeited the money and returned

plaintiff's claim and bond. 21 U.S.C. § 881; 19 U.S.C. § 1609. Plaintiff then sought an administrative remedy through a petition for remission and request for reconsideration. The request was denied by the DEA Forfeiture Counsel. Plaintiff next turned to the United States District Court, where he filed a claim for return of the forfeited money. Plaintiff's claim was again denied. Plaintiff then brought the present action in this court.

## DISCUSSION

Plaintiff alleged that the court had jurisdiction over his claim under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1982), which states in relevant part:

> The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

Plaintiff inferred that since he did not receive adequate notice of seizure of his property, and was misinformed by a DEA agent as to enforcement of procedural formalities, his Fourth Amendment rights under the Constitution were violated. Plaintiff further alleged that the improper denial of his claims by the District Court constituted an infringement of his right to due process of law under the Fifth Amendment of the Constitution.[1]

This court has addressed these very issues under almost identical factual patterns on three recent occasions, *Noel v. United States,* 16 Cl.Ct. 166 (1989); *Torres v. United States,* 15 Cl.Ct. 212 (1988); *La-Chance v. United States,* 15 Cl.Ct. 127 (1988). In each case, plaintiffs brought claims before the court for the seizure of currency by the DEA in connection with drug investigations. On each occasion, the court determined that it did not have juris-

diction over claims brought under the Fourth and Fifth Amendments of the Constitution since neither amendment mandated the payment of money by the United States. *Noel,* 16 Cl.Ct. at 169; *Torres,* 15 Cl.Ct. at 215-16; *LaChance,* 15 Cl.Ct. at 129-30. The court agrees. It is well settled that "[t]his court has no jurisdiction over claims based upon the Due Process and Equal Protection guarantees of the Fifth Amendment, because these constitutional provisions do not obligate the Federal Government to pay money damages." *Carruth v. United States,* 224 Ct.Cl. 422, 445, 627 F.2d 1068, 1081 (1980). *See Inupiat Community of the Arctic Slope v. United States,* 230 Ct.Cl. 647, 662, 680 F.2d 122, 132, *cert. denied,* 459 U.S. 969, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982); *Conservative Caucus, Inc. v. United States,* 228 Ct.Cl. 45, 54, 650 F.2d 1206, 1211-12 (1981). Under the same reasoning, the court has no jurisdiction over plaintiff's Fourth Amendment claims.

Plaintiff attempted to discredit this precedence by alleging that the court misapplied the Tucker Act in the *Noel, Torres,* and *LaChance* decisions. Plaintiff boldly claimed that the Court of Claims in *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967), established binding precedent which has since been misinterpreted and misapplied by this court. *Eastport* has been repeatedly cited for the proposition that this court has no power to grant relief under 28 U.S.C. § 1491 if the law or regulation being sued upon does not mandate compensation by the United States for the damages sustained. Plaintiff asserted that *Eastport* granted jurisdiction to any claimant who merely alleged that the government had improperly exacted or retained its money. Plaintiff's assertion is unfounded. The holding and the language of *Eastport* are very explicit:

> Under section 1491 what one must always ask is whether the constitutional clause or the legislation which the claimant cites can fairly be interpreted as

1. Plaintiff did not expressly claim denial of his constitutional rights, but his complaint was vague and seemed to intimate Fourth Amend- ment and Fifth Amendment due process arguments.

**570**

mandating compensation by the Federal Government for the damage sustained. If not, this court cannot give relief under Section 1491, although some separate general principle—arising, for example, from tort law—might lead to a remedy in another forum or under some special relief provision.

*Id.* at 607, 372 F.2d at 1009. The Tucker Act does not create any substantive right enforceable against the United States for money damages. *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983); *Kelly v. United States,* 826 F.2d 1049, 1051 (Fed.Cir.1987). The source of law upon which a claim is founded must mandate the payment of money damages by the Federal Government. *Mitchell,* 463 U.S. at 218, 103 S.Ct. at 2968; *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976). The forgoing arguments leave this court no choice but to dismiss plaintiff's claim.

■ Plaintiff further alleged that jurisdiction is proper in this court since an implied contract existed between plaintiff and defendant. Plaintiff asserted that defendant's seizure of his money created some sort of an implied contract on the part of the government to pay the money back. Implied-in-fact contracts require the same mutuality of intent, offer and acceptance, and a showing that the agent whose conduct is relied upon had actual authority to bind the government as do express contracts. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985); *Russell Corp. v. United States,* 210 Ct.Cl. 596, 608–09, 537 F.2d 474, 481–82 (1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977); *Sperry Corp. v. United States,* 13 Cl.Ct. 453, 458–59 (1987). Plaintiff failed to demonstrate the existence of any of these essential elements. It is apparent to the court that no implied-in-fact contract existed between plaintiff and defendant. The court thus finds plaintiff's contractual argument to be without merit.

■ Plaintiff further asserted that he should not be bound by the twenty day filing limitation of 19 U.S.C. § 1608 since he was purportedly misinformed by a DEA agent that the limitation would not be "strictly enforced." There is no dispute that the United States is immune from suit except where it acquiesces to litigation and that statutes of limitation are considered waivers of sovereign immunity. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). "[T]he terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit," *id.,* and any waiver of the government's sovereign immunity is to be strictly construed in favor of the government. *Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986); *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983); *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951). As a court of specific jurisdiction, the Claims Court is required to honor the statutes that define its jurisdiction. *Chavez v. United States,* 14 Cl.Ct. 212, 214 (1988). Applying these maxims to the case at hand, the court must strictly construe the twenty day limitation period.

As to plaintiff's contentions that he was misinformed by a DEA officer, the government is not estopped from asserting a statute of limitations even when a misrepresentation has been made by one of its agents. *Bevelheimer v. United States,* 4 Cl.Ct. 558, 561–62 (1984). "Assuming that such misrepresentations were made, the government is not estopped from applying the statute of limitations since estoppel cannot be used against the Federal Government." *Id.* at 562 (citing *Legerlotz v. Rogers,* 266 F.2d 457, 459 n. 5 (D.C.Cir.1959)); *see Penn–Ohio Steel Corp. v. United States,* 173 Ct.Cl. 1064, 1085, 354 F.2d 254, 267 (1965). Plaintiff's attempt to divert liability for his own inaction to a government agent is meritless. The court finds plaintiff's failure to file a timely claim to be fatal.

It is apparent that plaintiff's cause of action is not properly before this court. Furthermore, the court views plaintiff's claims as a collateral attack on the District Court's prior decision. There is little dispute that this court's jurisdiction does not extend to the review of substantive actions taken by other federal courts. *Golder v. United States*, 15 Cl.Ct. 513, 517 (1988); *see also, Meincke v. United States*, 14 Cl.Ct. 383, 386 (1988). Plaintiff's vague complaint implied that since the District Court's decision was in error, he was justified in bringing the same cause of action before this court. Such matters are barred by the doctrine of res judicata, which precludes the court from hearing an action involving the same parties, facts, and issues as an action finally decided, on the merits, by a court of competent jurisdiction. *See Reidt v. United States*, 13 Cl.Ct. 741, 744 (1987); *Prizer v. United States*, 11 Cl.Ct. 184, 186–87 (1986) (citing *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948)). If plaintiff felt that the district court decision was in error, his proper remedy was to seek review on appeal.

## CONCLUSION

For the forgoing reasons and in keeping with established precedent, defendant's motion to dismiss is granted. The Clerk of the court is directed to enter judgment dismissing the complaint. Costs.

IT IS SO ORDERED.