**VEREDA, LTDA., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 96–256C.**

United States Court of Federal Claims.

Aug. 13, 1998.

---

Mark L. Whitaker, Shaw Pittman, Potts & Trowbridge, Washington, DC, for plaintiff.

Shalom Brilliant, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant, with whom was David M. Cohen, Director, and Frank W. Hunger, Assistant Attorney General.

## OPINION

SMITH, Chief Judge.

This case comes before the court on defendant's Motion To Dismiss and concerns the Drug Enforcement Agency's (DEA) seizure of a 1978 Rockwell Commander aircraft (hereinafter "the airplane"), and the attempts of those financially interested in that airplane to seek redress for that seizure.

There is no property right in the profits, instrumentalities, or subject matter of the drug trade. This illegal and immoral trade is rightly a pariah in any civilized society. The government may properly seize any and all goods related to, used in, supporting or coming out of the profits of the trade. However, the fundamental right of liberty and property may not be infringed merely by uttering the talismanic claim that an object is connected with the drug trade. To allow such a result would turn the fifth amendment into a technique for, rather than a barrier to, improper seizure. Whenever the government takes property without legal right, the owner has a presumptive right to come to this court.

For the purposes of this decision on defendant's Motion to Dismiss, the following facts are taken from plaintiff's First Amended Complaint, though they appear to be largely undisputed.

## FACTS

Plaintiff Vereda Ltda. (Vereda) is a limited partnership registered and doing business in Colombia as a broker and dealer in small aircraft and aircraft parts. In early 1993, Vereda concluded an oral contract with Aeroexpreso de la Frontera (Aeroexpreso), another Colombian limited partnership that obligated Vereda to locate and deliver to Aeroexpreso a twin-engine turboprop airplane for use in Aeroexpreso's air taxi business. Vereda was, thus, Aeroexpreso's agent, authorized to acquire such an airplane. Vereda, in turn, contracted with Export–Air Corp. (Export–Air), a Miami, Florida based company, to help Vereda locate a suitable plane in the United States, and to act as export agent in the transaction.

Vereda sent money to Export–Air to make an initial payment on the airplane that Export–Air located, a Rockwell Commander being sold by M & M Aircraft Inc. (M & M) of North Carolina. Export–Air purchased the airplane for $460,000 from M & M, with $50,000 due immediately as a deposit, and the balance payable upon delivery to Fort Lauderdale, Florida on August 6, 1993. After Export–Air wired the amount of the deposit to M & M, Aeroexpreso sought and obtained permission from the Colombian authorities to import the plane into that country. Aeroexpreso agreed to pay Vereda $544,500 for the airplane upon delivery into Aeroexpreso's possession in Bogota, Colombia. Under the terms of Aeroexpreso's contract with Vereda, Aeroexpreso agreed to pay $50,000 to Export–Air and $222,250 (half the total purchase price) to Vereda prior to receipt of the airplane in Colombia. Vereda accepted a mortgage on the remainder of the purchase price from Aeroexpreso; in exchange for which, Vereda would finance the balance of the price over one year at 36% interest. As of August 3, 1993, Vereda had paid Export–Air a total of $496,000. On August 4, 1993, Export–Air transferred $412,424.60 into M & M's account, covering the balance of the purchase price owed on the airplane.

On August 6, 1993, the DEA seized the airplane when it arrived in Fort Lauderdale,

Florida on the strength of a seizure warrant alleging probable cause to believe that the airplane was intended to be used to facilitate the possession and transportation of cocaine, in violation of 21 U.S.C. § 881(a)(4), and that the airplane represented proceeds of illegal drug transactions in violation of 21 U.S.C. § 881(a)(6). The warrant also alleged that the ultimate purchaser and user of the airplane was not Aeroexpreso, but rather Avia 2000, a Colombian corporation allegedly owned by a member of the Medellin cocaine cartel. The evidence that supported the warrant was information provided by Mr. Brad Primm, an employee of East Coast Avionics. Mr. Primm told the DEA that his company was submitting a bid for work on the airplane, and that its purchaser was Avia 2000.[1]

On October 28, 1993, Aeroexpreso filed a claim of owner and cost bond to protest the forfeiture of the airplane; the DEA rejected the claim as untimely on November 16, 1993, and the airplane was administratively forfeited (on November 19, 1993) to the government under the provisions of 21 U.S.C. § 881 and 19 U.S.C. §§ 1607–1609.[2] Both Aeroexpreso and Vereda filed separate petitions for remission of the forfeiture, as provided in 21 C.F.R. § 1316.79, and waited until May

12, 1995 and April 19, 1995, respectively for the DEA's decisions rejecting the respective petitions. Separate petitions for reconsideration were subsequently denied; the DEA rejected Vereda's petition for reconsideration on May 8, 1996.

While the DEA decisions on the petitions for remission were pending, Aeroexpreso filed a complaint in the U.S. District Court for the Southern District of Florida seeking return of the airplane on two constitutional grounds (unlawful search and seizure under the Fourth Amendment, and lack of due process under the Fifth Amendment) and on a negligence theory. All counts were dismissed for lack of jurisdiction by the district court in an unpublished opinion rendered on June 28, 1994. Export–Air also filed a complaint in the Southern District of Florida, seeking review on the merits of the DEA's forfeiture decision, and alleging that it received insufficient notice of the forfeiture under 19 U.S.C. § 1607(a). The district court granted summary judgment to the government, holding that it lacked jurisdiction to review the DEA's action, and that Export–Air had received statutorily and constitutionally sufficient notice.

---

1. Plaintiff Vereda alleges that the information on which the seizure warrant was based was demonstrably false, and that no legal or factual basis existed for the DEA's seizure and subsequent forfeiture. As discussed below, this court will not review the merits of the DEA's seizure. *See infra* parts I.A., I.B.

2. An administrative forfeiture proceeds as follows. First, any vehicle, including any aircraft, used or intended for use to transport or facilitate transportation of controlled substances or raw materials thereof is subject to forfeiture, and no property rights exist in them. 21 U.S.C. § 881(a)(1–4) (1988 & Cum.Supp.1997). If the value of such a vehicle is less than $500,000, "the appropriate customs officer shall cause a notice of the seizure of such article[ ] and the intention to forfeit ... according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a) (1988 & Cum.Supp.1997). Plaintiff alleges that Aeroexpreso never received notice of the forfeiture due to the DEA's failure to send the notice to the proper address. The notice issue is

examined in depth below. *See infra* part I.C. Once the vehicle is seized, and notice of the administrative forfeiture is published, "[a]ny person claiming such [vessel]" must file a claim with the agency stating his interest therein, along with a cost bond, within 20 days of publication. 19 U.S.C. § 1608 (1988 & Cum.Supp.1997). If the claim and cost bond are filed within 20 days, the claim and bond must be transmitted to the United States Attorney for the district in which the property was seized, "who shall proceed to a condemnation of the merchandise or other property in the manner prescribed by law." *Id.* "If no such claim is filed or bond given within the twenty days," the property is declared forfeited, and the government may dispose of the property as it wishes. 19 U.S.C. § 1609(a) (1988 & Cum. Supp.1997). The declaration of forfeiture has the same force and effect as a final order of judicial forfeiture in a district court. *Id.* § 1609(b). Title vests in the government. *Id.* Administrative forfeitures, once completed, may be contested by petitions for remission. 19 U.S.C. § 1613(a); 21 C.F.R. § 1316.79. Because Vereda failed to timely file the claim and cost bond, it was forced to seek relief through a petition for remission from the same agency that it alleged had not given it notice of the seizure in the first place.

On May 6, 1996, Vereda filed a complaint in this court and then filed an amended complaint on June 21, 1996. Defendant filed a motion to dismiss on August 5, 1996. After reviewing defendant's Motion To Dismiss and plaintiffs opposition thereto, and for the reasons set forth below, the court DENIES defendant's motion as to Counts I and II of plaintiff's complaint, and GRANTS defendant's motion as to Count III.

## DISCUSSION

### I. COUNT I: DEA Seizure of the Airplane Constituted an Improper Exaction

Plaintiff Vereda alleges that the DEA's seizure and retention of the airplane constitutes an improper exaction of property, in contravention of the provisions of 21 U.S.C. §§ 801, 881 (1988 & Cum.Supp.1997), for which it is entitled to damages or other monetary relief. Defendant counters that this court has no jurisdiction over Vereda's "collateral attack upon an outstanding DEA administrative determination," because Congress foreclosed judicial review of such determinations. Defendant argues that plaintiff's failure to timely contest the forfeiture within the statutory time periods set forth in 19 U.S.C. §§ 1607–1609 (1988) bars it from obtaining any relief from this court. The court disagrees.

"[T]he Court of Claims [the court is referring to the Claims Court] has repeatedly held that it lacks jurisdiction to provide equitable relief for constitutional violations arising out of the forfeiture process". *United States v. Woodall*, 12 F.3d 791, 794 (8th Cir.1993) (citing a series of Claims Court cases: *Lark, Noel, & LaChance* ) [hereinafter referred to as the "Claims Court cases"]. It also lacks jurisdiction to review the DEA's denial of plaintiff's petition for remission of the administrative forfeiture. 19 U.S.C. § 1609(b) (1988 & Cum.Supp.1997). However, despite defendant's characterization of plaintiff's claim as an attempt to "have this Court vacate a disposition possessing the force and effect of a district court judgment," plaintiff seeks monetary, not equitable, relief from federal agency action that it claims constituted an illegal exaction. "[W]hile Congress'

power to regulate is not impaired, the government may be compelled to pay for the results of its actions, especially when in so doing the government actually is paying because it received a benefit." *Winstar Corporation v. United States*, 21 Cl.Ct. 112, 116 (1990). Plaintiff does not attempt to, and cannot, relitigate the administrative forfeiture proceeding, and the court cannot provide that kind of equitable relief. There are, however, other possible bases for jurisdiction in this court, several of which the Claims Court has addressed in a series of factually similar cases.

### A. The Claims Court Cases

A series of Claims Court precedent suggests that this court has no jurisdiction over claims arising from drug-related forfeitures effected pursuant to the DEA's authority under 21 U.S.C. § 881 (1988 & Cum.Supp. 1997). An examination of these cases reveals exactly what kinds of claims cannot be decided by this court.

In *Torres v. United States*, 15 Cl.Ct. 212 (1988), plaintiffs contested DEA seizure of $28,000 in currency and subsequent administrative forfeiture thereof under the customs laws, 19 U.S.C. §§ 1607–1618, as authorized by 21 U.S.C. § 881(d). The constitutionality of this forfeiture law has been upheld, even when the forfeiture adversely affects the property interests of innocents. *See Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680, 94 S.Ct. 2080, 2090, 40 L.Ed.2d 452 (1974). Plaintiffs alleged that their money was being wrongfully held; that the seizure constituted a taking without just compensation; that the government violated the Federal Tort Claims Act; and that their Fifth Amendment due process rights were violated by the seizure. "By failing to file a cost bond, plaintiffs opted to proceed administratively," rather than challenging the forfeiture in district court in accordance with 19 U.S.C. § 1608. 15 Cl.Ct. at 216–17. No procedural violations were alleged. The court held that (1) even if an improper seizure had occurred, the Claims Court would not have jurisdiction if the plaintiff asserted that the government's acts were unlawful (no taking claim can be maintained based on the

behavior of the DEA agents),[3] and (2) no court should review the DEA's denial of plaintiff's petition for remission from the administrative forfeiture.

Similarly, in *LaChance v. United States*, 15 Cl.Ct. 127 (1988), plaintiff contested DEA seizure of $49,000 in currency; DEA again denied a petition for remission. Plaintiff then filed a complaint in district court, which was dismissed for lack of jurisdiction. The district court held that because plaintiff had previously pursued his claim by way of administrative forfeiture, he did not have a right to judicial review. *LaChance v. DEA*, 672 F.Supp. 76, 78–80 (E.D.N.Y.1987); *LaChance*, 15 Cl.Ct. at 129. No procedural violations were alleged. Plaintiff asserted that the Claims Court had jurisdiction because his claim was based upon violations of the Fourth Amendment and the due process clause of the Fifth Amendment (alleging lack of probable cause). The Claims Court held that neither the Fourth Amendment nor the Fifth Amendment's Due Process clause mandated a payment of money by the United States; thus, jurisdiction was lacking under the Tucker Act. 15 Cl.Ct. at 130. Further, "in reviewing a seizure and forfeiture case taken through administrative procedures, it would be improper for the court to reach the merits of the administrative decision." *Id.* The court dismissed for lack of jurisdiction.

The Claims Court again dismissed a challenge to a DEA seizure of currency in *Noel v. United States*, 16 Cl.Ct. 166 (1989), for lack of jurisdiction. Plaintiff contested the seizure initially through the DEA administrative process, claiming violation of constitutional rights; the DEA eventually rejected his petition for remission. He then filed a case in district court, which dismissed his claim for failure to prosecute. Though the DEA retained the money seized (approximately $23,000), plaintiff was not charged with any criminal violations, and contended in the Claims Court that the seizure was without probable cause and thus violated the due process clause of the Fifth Amendment.

Plaintiff also argued that the manner of acquisition constituted a taking under the Fifth Amendment, and that the seizure itself violated the Fourth Amendment. No procedural violations were alleged. The court held that "in order to invoke the jurisdiction of the Claims Court, a plaintiff must state a claim based on one of the specific constitutional provisions, federal laws, or federal regulations that mandate payment of money damages." 16 Cl.Ct. at 169 (citing *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967)). The court held that it lacked jurisdiction to grant relief on either the Fourth Amendment or Fifth Amendment due process claims. With respect to the takings clause claim, the court found that plaintiff "satisfies the threshold requirements of the Tucker Act," but "because it involves regulatory police powers and sounds in tort, this purported taking claim is not an actual taking claim within the jurisdiction of this court." 16 Cl.Ct. at 170. The court characterized an "actual" taking as one in which "the Government [uses] lawful property, contract, or regulatory power to convert private property to public uses." *Id.* (citing *Florida Rock Indus. v. United States*, 791 F.2d 893, 898–99 (Fed.Cir.1986); *Armijo v. United States*, 229 Ct.Cl. 34, 663 F.2d 90, 93 (1981)). Plaintiff's challenge to the propriety or lawfulness of government action, by contrast, left him with no remedy other than a tort action, over which the Claims Court had no jurisdiction. "If any federal court has jurisdiction in this case, it is most likely the United States district court governing the territory in which the $22,355 was seized." 16 Cl.Ct. at 172. Plaintiff was thus granted no relief.

Most analogous to the present case is *Lark v. United States*, 17 Cl.Ct. 567 (1989). In *Lark*, currency on plaintiff's person was seized at the Los Angeles International Airport. Plaintiff sought an administrative rem-

---

**3.** Based upon *Del–Rio Drilling Programs Inc. v. United States*, 146 F.3d 1358 (Fed.Cir.1998), *Shelden v. United States*, 7 F.3d 1022 (Fed.Cir. 1993), *Osprey Pacific Corp. v. United States*, 41 Fed.Cl. 150 (1998), and *Froudi v. United States*,

22 Cl.Ct. 290 (1991), this portion of the holding in *Torres* is no longer sound law. The takings issue is addressed in more detail below. *See infra* part II.

edy through the DEA, culminating with a denial of the petition for remission. The district court then denied plaintiff's claim for return of the money. In district court, plaintiff alleged (1) inadequate notice of seizure, a violation of the Fourth Amendment; (2) violation of Fifth Amendment due process rights, and (3) that a DEA agent informed him that the agency did not adhere to the deadlines set in forfeiture cases by 19 U.S.C. § 1607 and its attendant regulations, 21 C.F.R. § 1316.72 et seq., causing plaintiff's claim and bond to be submitted after the twenty day limitation period established by statute. 17 Cl.Ct. at 568–69. The court rejected plaintiff's argument that *Eastport Steamship* granted jurisdiction in the Claims Court to any claimant who alleged that the government had improperly exacted or retained its money. *Id.* at 569 (citing *Eastport Steamship*, 372 F.2d at 1009). Again, because neither constitutional provision that undergirded plaintiff's claim mandated the payment of money from the government, the court dismissed plaintiff's complaint. With respect to the claim of misrepresentation by the DEA agent, the court held that the government could not be estopped from applying the statute of limitations despite the erroneous advice given. 17 Cl.Ct. at 570. Further, the court characterized plaintiff's complaint as improperly asking the Claims Court to review a decision made by the district court: "There is little dispute that this court's jurisdiction does not extend to the review of substantive actions taken by other federal courts." *Id.* at 571 (citations omitted).

The Claims Court cases establish that this court does not have jurisdiction over either constitutional claims under the Fourth Amendment or the Fifth Amendment due process clause. It likewise does not have jurisdiction to review the merits of DEA administrative forfeiture decisions. They

also suggest that illegal exaction claims cannot be maintained in this court, at least under the specific facts of those cases (e.g., the estoppel argument in *Lark*). However, both the facts here and recent law applicable to plaintiff's case effectively modify some of the teaching of the Claims Court cases.

**B. Effect of the Claims Court Cases; *Aerolineas Argentinas***

None of the Claims Court cases cited by the *Woodall* decision and mentioned above preclude the court from asserting jurisdiction in this case. Here, the court is not reviewing the DEA's denial of plaintiff's petition for remission. Neither the merits nor procedures of the DEA's decision-making processes are at issue here.[4] The court's assertion of jurisdiction over Vereda's illegal exaction claim is appropriate given the Federal Circuit's decision in *Aerolineas Argentinas v. United States*, 77 F.3d 1564 (Fed.Cir. 1996), in which the appellate court reversed the Court of Federal Claims' determination that it lacked jurisdiction over an alleged illegal exaction.[5] Specifically, the case concerned the Immigration and Naturalization Service's refusal to bear the costs of detention of illegal aliens who had attempted to enter the country on commercial flights. The court found that the agency had disregarded the governing statute, "and its persistence in ordering the airlines to pay detention and maintenance costs of TWOV (transit without visa) and stowaway aliens pending decision of their requests for political asylum, is stated by the airlines to be an illegal exaction of moneys, recovery of which may be had under the Tucker Act." 77 F.3d at 1571–72. The Federal Circuit, relying upon language from *Eastport Steamship*, observed that "an illegal exaction claim may be maintained when 'the plaintiff has paid money over to the Government, directly or in effect,

---

4. "If there is no opposition [to a forfeiture within the statutory time limits], and the property is administratively forfeited, the courts may review the administrative procedure leading to that forfeiture, but not the merits of the forfeiture itself." *Muhammed v. Drug Enforcement Agency*, 92 F.3d 648, 651 (8th Cir.1996) (citations omitted).

5. *See also Bowman v. United States*, 35 Fed.Cl. 397, 400 (1996) ("As Plaintiff seeks the return of

the monetary value of his forfeited property ... his claim may qualify as one of illegal exaction under the Tucker Act."). The court in this case stated the two "requisite elements of an illegal exaction: (1) that money was taken by the Government and (2) that a provision of the Constitution was violated in doing so." 35 Fed.Cl. at 401.

and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.' " 77 F.3d at 1572–73 (quoting *Eastport Steamship*, 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967)). Further, the Federal Circuit recognized that an illegal exaction has occurred "when 'the Government has the citizen's money in its pocket.' Suit can then be maintained under the Tucker Act to recover the money exacted." 77 F.3d at 1573 (quoting *Clapp v. United States*, 127 Ct.Cl. 505, 117 F.Supp. 576, 580, *cert. denied*, 348 U.S. 834, 75 S.Ct. 55, 99 L.Ed. 658 (1954)). The Federal Circuit concluded that the agency's misapplication of the governing law and regulations, which imposed costs upon the plaintiff airlines, constituted an illegal exaction of moneys to meet an obligation of the government. 77 F.3d at 1578.

█ The precedent laid out in *Aerolineas Argentinas* must be followed, unlike the prior Claims Court cases that declined jurisdiction over drug forfeiture plaintiffs' claims. First, in only one of the Claims Court cases, *Lark*, did plaintiff raise a claim that the DEA had acted contrary to a governing statute or regulation during its administrative forfeiture process by failing to grant plaintiff adequate notice of the forfeiture. Unhappily for plaintiff, he pled his lack of notice claim as a Fourth Amendment violation, for which he could seek no redress under the Tucker Act or, therefore, from the Claims Court.[6] More generally, the plaintiffs in the Claims Court cases sought equitable relief based upon constitutional provisions that did not mandate the payment of money damages from the government—the Fourth Amendment, and the due process clause of the Fifth Amendment. As in *Aerolineas Argentinas*, though, plaintiff here claims that an exaction has occurred due to the failure of a federal agency to adhere to the law, and seeks monetary relief from that illegal exaction. Vereda maintains that "[t]he DEA's seizure and retention of plaintiff's airplane constitutes an improper exaction of property, in contravention of the seizure and forfeiture provisions of the Controlled Substances Act, 21 U.S.C. § 801 et seq.;". This, under *Aerolineas Argentinas* and the cases cited therein, states a claim under the Tucker Act that this court must decide. Pl. Compl. at 7. However, Vereda's claim may still fail for inability to state a claim entitling it to relief if it does not appear from the pleadings that "the exaction was contrary to law[;] [such failure would serve] as an adjudication on the merits." *Aerolineas Argentinas*, 77 F.3d at 1574 (citing *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). Thus, the court now must examine the merits of the notice issue in order to determine whether the plead facts could result in a finding that the exaction was contrary to law.[7]

**6.** The Federal Circuit noted that "some claims may be phrased legitimately in a way that would invoke either district court jurisdiction or jurisdiction of the Court of Federal Claims". Cf. 28 U.S.C. § 1500. *Aerolineas Argentinas*, 77 F.3d at 1578 n. 1 (Nies, J., concurring). Defendant's characterization (Def. Mot. to Dismiss at 11–12) of the district courts as exclusive fora for the resolution of plaintiff's claim is incorrect. Neither 28 U.S.C. § 1355 nor 28 U.S.C. § 1395 precludes the jurisdiction of the Court of Federal Claims under the Tucker Act. These jurisdictional statutes simply exclude state courts, and discuss venue. Because Vereda has no similar claims pending in district court, this court may exercise jurisdiction if available under the Tucker Act. *See Glick v. United States*, 25 Cl.Ct. 435 (1992); *Brown v. United States*, 175 Ct.Cl. 343, 358 F.2d 1002 (1966). *Cf. Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed. Cir.1994) (challenge to denial of permit brought in district court did not deprive Court of Federal Claims of jurisdiction to hear a claim for just compensation founded on the Fifth Amendment);

*Marshall Leasing Inc. v. United States*, 13 Cl.Ct. 368 (1987) (action challenging administrative forfeiture in district court precluded Court of Federal Claims jurisdiction over claim seeking monetary relief).

**7.** Contrary to defendant's contentions, this court is not barred from deciding the notice issue with respect to Vereda based upon the litigation in the Southern District of Florida. The applicable standard for res judicata was stated in *Lark*, 17 Cl.Ct. at 571, where this court held that plaintiff's prosecution of the same cause of action brought in district court was barred by res judicata if it involved the same parties, facts, and issues as the action finally decided, on the merits, by a court of competent jurisdiction. *Id.* (citing *Reidt v. United States*, 13 Cl.Ct. 741, 744 (1987); *Prizer v. United States*, 11 Cl.Ct. 184, 186–87 (1986)). By this standard, the dispositions of Aeroexpreso's and Export–Air's claims by the Southern District of Florida do not preclude Vereda from raising the issue of lack of notice in this court.

## C.  Lack of Notice

Plaintiff contends that Aeroexpreso De La Frontera did not receive timely notice of the DEA's administrative forfeiture proceeding.[8] Defendant counters with the opinions of the U.S. District Court for the Southern District of Florida, stating specifically that both Vereda and Aeroexpreso De La Frontera were afforded notice.  Though this court would normally accept plaintiff's allegations of lack of notice as true for purposes of deciding this motion, the rulings of the U.S. District Court on the notice issue must be considered first.  Thus, the court must now examine what exactly the district court decided on the notice issue, in order to rule on the appropriate limits of plaintiff's allegations.

In *Aeroexpreso De La Frontera v. United States*, No. 94–0365 (S.D. Fla. June 28, 1994) (order dismissing the case for lack of jurisdiction), the district court agreed with the government that it "should not exercise its equitable jurisdictional powers to review the merits" of the DEA's administrative forfeiture decision with respect to the same airplane mortgaged to Vereda.  *Aeroexpreso*, Slip. Op. at 1; Exh. 1 to Def. Mot. to Dismiss.  The district court found that the DEA had sent copies of the notice of seizure by certified mail to "(1) Aeroexpreso at its address in Santa Fe de Bogota, Colombia, and (2) Gerald Bopp, the custodian who last had possession of the airplane." Slip. Op. at 3–4.  Interested parties had until October 5, based upon the statutory deadlines of 19 U.S.C. § 1609(a), to file claims contesting the seizure.  Attorney Mariano Sole filed a "verified claim of owner" on behalf of Aeroexpreso on October 28, 1993, accompanied by a cashier's check of $5,000 obviously intended as bond in satisfaction of the statute.  Because the claim and bond were untimely,

however, the DEA returned the check and administratively forfeited the airplane.

Aeroexpreso argued that "the government seized the airplane in callous disregard for its constitutional rights by affirmatively misleading counsel for Aeroexpreso as to the procedural posture of the administrative forfeiture taking place." Slip. Op. at 7.  Even if this was the case, however, the district court determined that the notice of seizure, sent directly to Aeroexpreso, and its publication "multiple times" in USA Today was constitutionally sufficient under the standards articulated in 19 U.S.C. § 1607(a), *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and *Glasgow v. DEA*, 12 F.3d 795 (8th Cir.1993).  Specifically, the district court emphasized that 19 U.S.C. § 1607(a) requires that notice "shall be sent to each party who appears to have an interest in the seized article;" this does not include the parties' attorneys.  Slip. Op. at 10.  Critically, Vereda was not a party to this action.  Nor did the district court determine whether Vereda deserved or received notice as required under the statute.

The other pertinent opinion from the Southern District of Florida, *Export–Air Corp. v. United States*, No. 94–2065 (S.D.Fla. Feb. 21, 1995) (order granting defendant's motion for summary judgment), stated that the notice of seizure sent to Aeroexpreso and Mr. Bopp "was also sent to Vereda Ltda., the original seller of the aircraft, on October 14, 1993." *Export–Air Corp.*, Slip. Op. at 3.  "It is noted that Aeroexpreso, for purposes of this litigation, was the intended ultimate purchaser of the aircraft.  Export–Air was an intermediate purchaser who was going to resell the subject aircraft to Aeroexpreso." *Id.* at 3–4.  The district court further stated that Mariano Sole was the attorney for Aer-

---

The recent case in this court, *Bowman v. United States*, 35 Fed.Cl. 397, 401–02 (1996), is inapposite on this issue for similar reasons.  In *Bowman*, this court acknowledged jurisdiction over an illegal exaction claim, but declined to exercise it due to extant judgments in the U.S. District Court for the District of Idaho, which granted the government summary judgment on plaintiff's forfeiture claims.  The difference here, of course, is that plaintiff's illegal exaction claim has in no sense been adjudicated on the merits in related district court litigation.

8.  Defendant is correct that "although the complaint states that La Frontera did not receive adequate notice of the impending administrative forfeiture ... Vereda nowhere alleges that it failed to receive notice." Def. Mot. to Dismiss at 10.  However, the court must assess whether notice was sufficient in order to determine whether the exaction was illegal.  Thus, Vereda's inartful pleading on this point does not determine the outcome (Count I of Plaintiff's Complaint).

oexpreso, Vereda, and Export–Air; Sole's untimely claim and bond, though, were filed on behalf of Aeroexpreso. *Id.* at 4. Most importantly, however, the *Export–Air* opinion tells this court that:

On August 6, 1993, Special Agent Baker of the DEA met with Mariano Sole, attorney for Export–Air, Aeroexpreso, and Vereda Ltda., and Fernando Gomez, president of Export–Air. At that time, both Mr. Sole and Mr. Gomez stated that the ultimate purchaser of the aircraft was Aeroexpreso. Thus, prior to publishing notice of seizure, defendants were informed by Export–Air itself that Aeroexpreso, and not itself, was the ultimate purchaser of the aircraft. Accordingly, defendants sent written notice to Aeroexpreso in addition to publication via the USA Today.

More importantly, however, it is clear from the pleadings and attached documents that Mr. Gomez and Mr. Sole were well aware of the forfeiture proceedings.... Export–Air, through its attorney, Mr. Sole, had verbal notice of the seizure on August 6, 1993, in addition to the publication notice through the USA Today.

*Id.* at 6–7. Vereda was also not a party to Export–Air's complaint in the Southern District of Florida. The court might imply, from the above facts, that because Mr. Sole received verbal notice of the seizure on August 6, 1993, one of his clients, Vereda, had actual notice under the statute. However, this question was not decided by the district court, and this court must now determine whether, on the above facts, Vereda received constitutionally sufficient notice. If Vereda did not receive such notice, its illegal exaction cause of action states a claim for relief in this court.

The DEA sent written notice directly to Vereda on October 14, 1993, nine days after the October 5 cutoff date (after which any claim and bond submitted to contest the airplane's seizure prior to administrative forfeiture was untimely). There is little doubt that this notice, assuming it was received, does not satisfy either the constitutional or statutory standards applicable to this case. *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657 (notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); 19 U.S.C. § 1607(a) ("Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article."). The October 14, 1993 notice did not apprise Vereda of the action so that they could object—the seizure was complete and uncontestable by October 5. The remaining question, then, is this: assuming that defendant knew that Mr. Sole was Vereda's attorney, did the verbal notice of seizure given to Mr. Sole on August 6, 1993 constitute sufficient notice to Vereda?

The notice issue has been often litigated in forfeiture disputes by plaintiffs attempting to reclaim property that the DEA has seized pursuant to its asset forfeiture authority. *Sarit v. DEA,* 987 F.2d 10 (1st Cir.), *cert. denied,* 510 U.S. 888, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993), is a leading case in this regard. In *Sarit,* plaintiffs attempted to recover over $40,000 seized by the DEA, which was then administratively forfeited, contending that they had not received constitutionally adequate notice of the administrative forfeiture. In finding that the DEA had met the constitutional standards, the First Circuit stated:

We note at the onset that while *Mullane* clearly contemplates inquiry into the "peculiarities" and the "practicalities" of a given case, it has not generally been interpreted to require a party to make additional attempts beyond notice that is legally sufficient at the time it is sent. *Mullane,* 339 U.S. at 314–15, 70 S.Ct. at 657. The Court has read an implicit bad faith standard into the notice inquiry, overturning notice even where formal procedures were followed if the notifying party knew or had reason to know that notice would be ineffective. Knowledge of the likely effectiveness of the notice is measured from the moment at which the notice was sent.

*Sarit,* 987 F.2d at 14 (citations omitted). More recent appellate cases have agreed with the above prescription. *See, e.g., Muhammed v. DEA,* 92 F.3d 648, 653 (8th Cir.

1996) (the required notice "is clearly focused on instructing parties not yet contesting the forfeiture in court what procedures must be followed"); *Aero–Medical Inc. v. United States,* 23 F.3d 328, 330–31 (10th Cir.1994) ("[I]t was unacceptable for the DEA to rely upon notice by publication while failing to use the information it possessed from the beginning of the forfeiture process to notify plaintiff."); *Woodall,* 12 F.3d at 794 ("When the government has actual knowledge of an interested party's whereabouts at the time forfeiture is commenced, failure to direct the statutorily required personal notice to that address cannot be considered compliance with either the statute or minimum due process standards."). *See also Calabro v. United States,* 830 F.Supp. 175, 179 (E.D.N.Y. 1993) (notice was constitutionally defective since DEA knew or reasonably should have known that mailing a notice to [plaintiff's] residence was not reasonably calculated to give actual notice of the pending administrative proceedings (citing *Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972))).

The court's research discloses only three cases in which the question of adequate notice was mentioned in the context of notice to an attorney rather than the client "party" required to be notified under the forfeiture laws. In *Martinez–Lorenzo v. Wellington,* 911 F.Supp. 383, 387–88 (W.D.Mo.1995), the district court held (citing *Woodall* ) that actual notice to either the prospective claimant or his counsel is required when the claimant is known to be incarcerated. There, "contacting an attorney that, as far as the FBI knew, last represented the claimant three months prior to the forfeiture proceedings is hardly adequate when Martinez–Lorenzo's whereabouts were readily discoverable and ... actually known to the FBI." 911 F.Supp. at 388. Thus, the written notice mailed to the attorney was no substitute for notice to the client. *Id.* at 386, 388. In another case where the prospective claimant was incarcerated, a copy of the notification letter sent to the claimant's present counsel in his "then-pending related criminal proceeding" that was acknowledged by a return receipt was

sufficient notification. *Bye v. United States,* 105 F.3d 856, 857 (2nd Cir.1997). The Eighth Circuit in *Woodall* noted that "if the government is incarcerating or prosecuting the property owner when it elects to impose the additional burden of defending a forfeiture proceeding, fundamental fairness surely requires that either the defendant or his counsel receive actual notice of the agency's intent to forfeit in time to decide whether to compel the agency to proceed by judicial condemnation." 12 F.3d at 794–95 (quoted in *United States v. Giraldo,* 45 F.3d 509, 511 (1st Cir.1995)). In *Woodall,* though, plaintiff alleged that neither he nor his attorney received notice of the impending forfeiture while he was incarcerated.

The above cases, unfortunately, do not resolve the notice issue in Vereda's situation. Unlike the attorney in *Bye,* Mr. Sole was not Vereda's counsel in a "then-pending related criminal proceeding" to the forfeiture when he learned of the forfeiture proceedings. The court must accept the correctness of the Southern District of Florida's statements (taken together) that Mr. Sole received verbal notice of the pending forfeiture of the airplane while representing Vereda. The court has jurisdiction, but cannot state that plaintiff has failed to state a claim on which relief can be granted. With no more illuminating facts in evidence, this court cannot determine the adequacy of the notice afforded Vereda. Plaintiff should be allowed to offer evidence on the notice issue, so that the court can decide whether or not the exaction alleged was in fact illegal. Defendant's motion to dismiss Count I must accordingly be denied. An evidentiary proceeding is necessary to determine what notice plaintiff actually had from its attorney, and what that attorney's relationship was to Vereda with respect to this matter.

## II. COUNT II: DEA Seizure Constituted a Taking Without Just Compensation in Violation of the Fifth Amendment

■ This court has jurisdiction over Plaintiff's Count II, pled in the alternative,[9] which

---

9. This is proper under *Eastport Steamship,* 372 F.2d at 1007–08 (proper claim under the Tucker

Act "must assert that the value sued for was improperly paid, exacted, or taken from the

alleges that DEA's seizure and retention of plaintiff's airplane constituted a taking of property without just compensation, in violation of the Fifth Amendment. *LaChance v. United States*, 15 Cl.Ct. 127, 130 (1988). *Torres* and *Noel* do not suggest a contrary conclusion; the effect of the latter cases was summarized in *Froudi v. United States*, 22 Cl.Ct. 290, 297 (1991):

> The court is aware of authority that suggests that just compensation is not available for wrongful forfeiture. In *Noel* and *Torres*, the court dismissed challenges to alleged wrongful forfeitures brought under the just compensation clause, since plaintiffs in those cases alleged that DEA officials had acted outside the scope of their authority under 21 U.S.C. § 881; the court held that a taking claim is made out only when plaintiffs allege that the relevant government officials were authorized to act as they did.
>
> In the case at bar, and contrary to *Torres* and *Noel*, there is no allegation that DEA agents were acting outside the scope of their authority....

*Froudi*, 22 Cl.Ct. at 297 (internal citations omitted). Similarly, plaintiff Vereda's case is not premised on allegations of federal agency actions outside the scope of statutory authority. It is based simply on the Fifth Amendment's prescription that private property shall not be taken for public use without just compensation; the "scope of authority" issue is not present. "[T]he allegation that the actions of government officials were authorized is not an element of a just compensation claim." Instead it "is an affirmative defense." *Froudi*, 22 Cl.Ct. at 300 (on motion for reconsideration) (citing *Florida Rock Industries v. United States*, 791 F.2d 893, 899 (Fed.Cir.1986)).

The court is aware of more recent decisions of the Court of Federal Claims that disagree with *Froudi* and insist that the "scope of authority" is an element of a just compensation claim and that "the appropriate focus [of determining the scope of statutory authority] is whether the DEA and its agents were authorized to administratively forfeit [the] particular property, not simply claimant in contravention of the Constitution, a

whether there was valid authority to make the initial seizure or whether the statute gives apparent authority to administratively forfeit property." *Crocker v. U.S.*, 37 Fed. Cl. 191, 196 (1997), *aff'd*, 125 F.3d 1475 (Fed. Cir.1997). The court in *Crocker* held that a plaintiff must go to district court "to correct a defective exercise of sovereign powers, at least with respect to forfeitures,". *Id.* at 197. In affirming *Crocker*, the Federal Circuit stated, "the trial court correctly held that it lacks the general federal question jurisdiction of the district courts, which would allow it to review the agency's actions and to grant relief pursuant to the Administrative Procedure Act,". *Crocker*, 125 F.3d at 1476. The Federal Circuit characterized Crocker's claim "as a challenge to the procedural propriety of the agency's forfeiture of her property;". *Id.* Thus, the Federal Circuit was not opining on the present situation where a plaintiff concedes the agency had the authority to take the property and they just want to be compensated. What is meant by authority is whether "the government officials are acting within the scope of their authority when they seize property,". *Osprey Pacific Corp.*, 41 Fed.Cl. 150, 157–58 (1998). "When there has been an authorized physical seizure of property, and that seizure was substantively wrong, a plaintiff may elect to come to this court and assert a taking claim." *Id.* As the Federal Circuit recently noted, "[n]either the Supreme Court nor this court has held that government conduct is 'unauthorized,' for purposes of takings law, merely because the conduct would have been found legally erroneous if it had been challenged in court ... Accordingly, a court's conclusion that government agents acted unlawfully does not defeat a Tucker Act takings claim if the elements of a taking are otherwise satisfied." *Del–Rio Drilling Programs Inc. v. United States*, 146 F.3d 1358, 1363 (Fed.Cir. 1998).

It is defendant's contention that, because Vereda filed a petition for remission, it has conceded guilt and thus has no property right. Def. Mot. to Dismiss at 16. There is simply no authority for such an assertion in either the governing statutes, 19 U.S.C. statute, or a regulation.").

§§ 1607–1613 & 21 U.S.C. § 881, or the applicable regulations, 21 C.F.R. §§ 1316.71–1316.80.[10] A petition for remission was the only remedy available to this plaintiff under these circumstances.

The fact that Vereda has neither admitted guilt nor been adjudicated guilty, coupled with the (to this court's knowledge) failure of the government to establish Vereda's role, if any, in the alleged illicit uses of the airplane, render the remainder of defendant's argument against the court's jurisdiction on the takings issue unavailing. The government argues, essentially, that plaintiff had no compensable expectation of a property right in the airplane, because "all property owners currently hold their property subject to the restriction that if they use it in the commission of a criminal offense it is forfeitable." *Bowman v. United States*, 35 Fed.Cl. 397, 406 (1996). This argument is true, but not relevant here. First, the DEA has determined nothing other than probable cause to issue a warrant for seizure of an airplane that either was allegedly proceeds of or allegedly would be used for illegal transactions. The fact that the DEA refused to grant a petition for remission does not render its forfeiture of the airplane unassailable and noncompensable. This court knows only that the administrative forfeiture is final under 19 U.S.C. § 1609, not that the airplane was used for illicit purposes. Further, unlike the plaintiff in *Bowman*, Vereda remains not only unconvicted of any criminal offense connected to the airplane, but was not even named on the seizure warrant. Plaintiff thus retains the expectation of a compensable property right with respect to his forfeited mortgage interest in the airplane. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1026, 112 S.Ct. 2886, 2898–99, 120 L.Ed.2d 798 (1992).

In the current procedural posture (defendant's motion to dismiss), the court finds Vereda to be an innocent mortgagee of seized property. As such, Vereda is in the same shoes as plaintiffs in *Shelden v. United States*, 7 F.3d 1022 (Fed.Cir.1993). The Sheldens were mortgagees of real property seized by the federal government from Shelden's mortgagors (the Washingtons) pursuant to the mortgagors' RICO violations. The Federal Circuit held, based on *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960) and the Fifth Amendment, that the Sheldens were to be compensated for the taking of their mortgage interest:

> There is no difference, for Fifth Amendment purposes, between a mortgage lien and the materialmen's liens at issue in *Armstrong*. A mortgagee's lien, such as that held by the Sheldens, is also a compensable property interest within the meaning of the Fifth Amendment.

7 F.3d at 1026 (internal citations omitted). "The precedent of this court further supports the rule that when the government destroys the value of the mortgage, the mortgagee has suffered a taking and must be compensated." *Id.* at 1027–28. "[T]he critical fact here is that the Sheldens could not enforce the mortgage against the United States after the property was forfeited." *Id.* at 1028. "The taking of the Shelden's property interest was effective on the day Washington's [mortgagor's] interest in the property was transferred to the United States...." *Id.* at 1028 n. 4. Importantly, the *Shelden* court noted that "[a] forfeiture under the Comprehensive Drug Abuse Prevention and Control Act is similar to a forfeiture under RICO for a takings analysis which applies constitutional

---

10. The cited footnote in *Froudi*, 22 Cl.Ct. at 298 n. 13, relied upon *Kiefer v. Department of Justice*, 687 F.Supp. 1363, 1365 (D.Minn.1988), which stated in the relevant passage: "Unlike the claimant who files a claim and cost bond, a petitioner seeking remission or mitigation of forfeiture does not necessarily contest the legitimacy of a forfeiture. On the contrary, under remission/mitigation procedures, forfeitability is presumed and the petitioner seeks relief from forfeiture on fairness grounds." 687 F.Supp. at 1365–66. This assertion was unsupported by

any citation to the statutes or regulations, in which no such presumptions can be found. Further, the plaintiff in *Kiefer* had already pled guilty and been sentenced to jail time on drug charges prior to contesting the forfeiture. *Id.* at 1364. Thus, the current assertion by the Defendant that "Vereda has conceded that the property at issue was used for illicit activity" simply by following the procedures (albeit in untimely fashion) set forth in DEA's regulations is disingenuous at best.

rather than statutory principles." *Id.* at 1029 n. 6.[11]

The parallels between the factual circumstances and the remedies available to the Sheldens and, potentially, to Vereda, are evident. Plaintiffs mortgage interest was valid and was seized by the DEA upon (at the latest) the completion of the administrative forfeiture proceedings. Vereda's mortgage interest in the airplane is currently unenforceable given the finality of the DEA's administrative proceedings. The value of the mortgage plaintiff has on the airplane has been thereby destroyed. Vereda may, therefore, have a right to compensation for the DEA's confiscation of its mortgage interest even if the mortgagor (presumably, Aeroexpreso) of the airplane is convicted of having engaged in illicit activity using the airplane. Only if Vereda is not an innocent mortgage holder, and this is a fact issue, is Vereda without a remedy.

Because plaintiff has stated a valid claim for relief under the Fifth Amendment for just compensation due for a taking of property, the court denies defendant's motion to dismiss Count II of plaintiff's complaint.

## III. COUNT III: DEA Seizure Constituted an Excessive Fine in Violation of the Eighth Amendment

■ Plaintiff pleads in Count III of its complaint that "the DEA's seizure and retention of plaintiff's airplane constitutes the imposition of an excessive fine, in violation of the Eighth Amendment to the United States Constitution,[12] for which plaintiff is entitled to damages or other monetary relief." In its reply to defendant's motion to dismiss, plaintiff argues that, because "it has never been alleged that the aircraft in question was ever used in illicit activity," the Eighth Amendment has been violated by the seizure. Defendant contends that both the extant DEA administrative forfeiture decision and the fact that the Eighth Amendment does not itself mandate the payment of money preclude this court from taking jurisdiction over plaintiff's cause of action. *See Testan,* 424 U.S. at 400, 96 S.Ct. 948; *Litzenberger v. United States,* 89 F.3d 818, 821 (Fed.Cir. 1996) (holding that failure to timely contest an administrative forfeiture waived the opportunity to assert an Eighth Amendment claim in a judicial forum).

This court cannot decide whether the DEA should have done what it did; it may only decide whether in doing so, plaintiff's constitutional rights were violated such that the Tucker Act affords a monetary remedy. A claim under the Eighth Amendment (in this case) asserts that the government imposed an excessive fine or cruel and unusual punishment. This challenges the merits of the DEA's action, rather than any procedural constitutional infirmities. *See Litzenberger,* 89 F.3d at 821 ("The Eighth Amendment prohibition against excessive fines is [an] example of available substantive arguments" for why property should not have been forfeited). Though plaintiff is technically correct that the government has not alleged that the airplane has been used in illicit activity (the DEA seizure warrant that led to the forfeiture simply alleged probable cause), this fact does not aid plaintiff in the prosecution of this cause of action. Neither this court nor the district court can hear collateral challenges on the merits to the DEA's administrative forfeitures once they become final. *Id.* The only exceptions to this rule have been addressed above; where the law

---

**11.** *Shelden* relied upon *In re Metmor Financial Inc.,* 819 F.2d 446 (4th Cir.1987) as a principled basis for its holding concerning the compensability of mortgage interests. Significantly, *Metmor* (like this case) involved an innocent mortgage holder who challenged a forfeiture executed under 21 U.S.C. § 881. *"Metmor's* holding that lienholders have a compensable property right has been followed by every court of appeals considering the rights of innocent lienholders in property forfeited under [21 U.S.C. § 881]." *Shelden,* 7 F.3d at 1029 n. 5 (citing real property forfeiture cases from several Circuits). *See also Calabro v. United States,* 830 F.Supp. 175, 179

(E.D.N.Y.1993) (applying *Metmor* to a situation in which a plaintiff acquitted of criminal charges sought return of forfeited property; "[t]here is no reason why innocent individuals who own cash taken by the government should be treated any differently from institutional lenders who hold liens on property seized by the government.").

**12.** "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

mandates the payment of money damages, and the government violates that law, plaintiff may have a remedy. The Eighth Amendment is not such a money-mandating provision. *See Calhoun v. United States,* 32 Fed. Cl. 400, 404–05 (1994) (dismissing claims brought under the First, Fourth, Fifth (due process), and Eighth Amendments for lack of jurisdiction).

Count III of plaintiff's complaint must therefore be dismissed for lack of jurisdiction.

## CONCLUSION

Plaintiff's case, No. 96–256C survives as to Counts I and II of its complaint. If, at the summary judgment stage, plaintiff can demonstrate that it received constitutionally insufficient notice, or that it in fact was an innocent mortgagee whose interest was destroyed by the airplane's forfeiture, it may recover monetary damages under either its exaction claim or its takings claim. The court thus DISMISSES Count III of plaintiff's complaint, and GRANTS the government's motion in part.

It is so ORDERED.